Joann AZARKHISH, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

No. 90–3093.

United States Court of Appeals, Federal Circuit.

Sept. 24, 1990.

James W. Taglieri, Cadeaux & Taglieri, P.C., Washington, D.C., argued for petitioner.

John S. Groat, Atty., Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director. Also on the brief was Murray M. Meeker, Office of Personnel Management, Washington, D.C., of counsel.

Before MICHEL and LOURIE, Circuit Judges, and BALDWIN, Senior Circuit Judge.

MICHEL, Circuit Judge.

Joann Azarkhish (Petitioner) appeals the decision of the Merit Systems Protection Board upholding the Office of Personnel Management's (OPM's) refusal to reconsider its denial of her application for disability retirement, filed untimely, because her request for reconsideration was also filed untimely and she did not establish a valid excuse under the applicable regulation. *Azarkhish v. Office of Personnel Management*, Docket No. DC831E8910254 (MSPB June 21, 1989). The Administrative Judge's (AJ's) decision became final on November 17, 1989, upon denial of review by the full Board, 42 M.S.P.R. 488, and this appeal followed. Because substantial evidence supports the AJ's finding that petitioner's physical and mental condition was not shown to have prevented her from filing for reconsideration in a timely manner, under the regulation OPM could not have been found to have abused its discretion in refusing reconsideration. Moreover, because the "new evidence" could have been obtained previously and, in any event, did not demonstrate that the AJ reached the wrong result or a result inconsistent with

other rulings, the full Board did not abuse its discretion in denying review. Accordingly, we affirm.

## BACKGROUND

Petitioner, an employee with the Department of Education, was seriously injured in an elevator accident on the job in January of 1985. Almost two years later, in November of 1986, she resigned and was separated from the Department of Education. About twenty months later, on July 7, 1988, she filed an application for disability retirement. *Azarkhish*, slip op. at 2. Meanwhile, the record reflects she underwent major surgery in 1985 and 1986 for back and neck injuries she sustained from the accident. One month after her second operation she slipped on a wet floor and landed on her back. Petitioner's Appendix, *Azarkhish v. Office of Personnel Management*, No. 90–3093, at 30–31 (Fed.Cir. filed Mar. 27, 1990) [hereinafter Pet.App.]. During the time following her first operation through mid–1987, petitioner sought and received psychiatric treatment for severe depression. *Id.* at 35–36.

OPM dismissed her application for disability retirement because the application was not filed within one year after her separation from government service, as required by statute. *See* 5 U.S.C. § 8337(b) (1988). In OPM's August 26, 1988 letter notifying petitioner of the dismissal of her application, petitioner was advised that she could request reconsideration of OPM's dismissal of her application, that the request "must be received in OPM within 30 days of [August 26, 1988]," and that failure to submit the request within the thirty-day time limit would result in dismissal of the request unless petitioner could show that she was unaware of the time limit, not notified of the time limit, or was prevented from filing by circumstances beyond her control. Pet.App. at 20 & 21 (letter from OPM to petitioner dated August 26, 1988).

Petitioner forwarded a copy of OPM's letter to her attorney, who received it on September 15, 1988. *Azarkhish*, slip op. at 2–3. The letter was misplaced after receipt by her attorney and he did not file a re-

quest for reconsideration with OPM. Petitioner, herself, mailed a request for reconsideration on October 10, 1988, and it was received by OPM on October 17, twenty-two days after the thirty-day deadline. *Id.* at 2. OPM thereafter sent petitioner a letter informing her that she had an opportunity to show that she was "not notified of the time limit, ... [or that she was] prevented by circumstances beyond [her] control" from submitting a request for reconsideration within the time limit. Pet. App. at 28 (letter from OPM to petitioner dated November 17, 1988).

Approximately one month later, counsel for petitioner responded to OPM's letter with a letter seeking to excuse petitioner's untimely filing of the request for reconsideration. He stated that the copy of OPM's letter, sent to him by petitioner, had been misplaced. *Azarkhish*, slip op. at 2-3. Counsel for petitioner additionally represented that "[petitioner's] psychological state was such that it would have been quite difficult for her to appreciate the requirements for filing for disability retirement. We would be happy to submit medical documentation in support of this argument." Respondent's Appendix, *Azarkhish v. Office of Personnel Management*, No. 90-3093, at 5 (Fed.Cir. filed May 9, 1990). The letter did not address petitioner's psychological or physical condition during the thirty-day time limit for filing a request for reconsideration, August 26, 1988 to September 25, 1988. The period of time counsel apparently was referring to was the period between when petitioner should have filed for disability retirement and when she did file: November, 1987 to July, 1988. In any event, no medical documentation was provided.

OPM, on February 21, 1989, denied the request for reconsideration because OPM found that petitioner had offered no evidence that she, herself, was prevented from filing the request for reconsideration in a timely manner. Pet.App. at 18; *see Azarkhish*, slip op. at 3. Petitioner appealed OPM's denial of her request for recon-

sideration to the Board. In support of her appeal, she submitted to the AJ a medical report dated October 6, 1988. On June 21, 1989, the AJ found that petitioner had failed to demonstrate she was prevented from filing a timely request for reconsideration and therefore OPM's denial of petitioner's untimely request for reconsideration was neither unreasonable nor an abuse of discretion. *Azarkhish*, slip op. at 4. Petitioner appealed the AJ's decision to the full Board and submitted to the Board two additional medical reports, written approximately one month after the AJ rendered his decision. The full Board denied review of the AJ's decision. Thereupon, the AJ's decision became final and this appeal followed.

## ISSUES

I. Whether there is substantial evidence to support the AJ's finding that petitioner was not prevented by circumstances beyond her control from timely requesting reconsideration of OPM's dismissal of her application for disability retirement.

II. Whether the full Board abused its discretion in denying review of the AJ's decision.

## ANALYSIS

Board decisions must be sustained unless they are arbitrary, capricious, an abuse of discretion, obtained without proper procedures, unsupported by substantial evidence, or otherwise not in accordance with law. 5 U.S.C. § 7703(c) (1988).

### I

OPM has discretion to extend the time limit for filing a request for reconsideration, but only "when the individual shows that [she] was not notified of the time limit and was not otherwise aware of it, or that [she] was prevented by circumstances beyond [her] control from making the request within the time limit." 5 C.F.R. § 831.109(e)(2) (1990).[1]

---

1. This case is governed by the facts found by the AJ, as applied to OPM's regulation regarding

allowable excuses for the untimely filing of a request for reconsideration. General equitable

■ There is no dispute that petitioner was aware of the time limit for filing the request for reconsideration. Thus, petitioner could have prevailed before the AJ only if she met her burden of demonstrating two things: first, that she was prevented by circumstances beyond her control from making a timely request for reconsideration, and second, that, on the facts presented to it, OPM abused its discretion in not extending the time limit for filing the request. The AJ found that petitioner was not prevented by circumstances beyond her control from filing a timely request for reconsideration because the medical report she submitted to the AJ stated that she was " 'alert and cooperative with a good fund of knowledge' " and there was " 'no evidence of her being depressed at [this] point.' " *Azarkhish,* slip op. at 4 (quoting the medical report submitted to the AJ). The physician saw petitioner on October 6, the date of his written evaluation, which was less than two weeks after the request for reconsideration was due. *Id.* at 3–4.

The sole medical evidence before the AJ shows that on October 6, petitioner's own physician found her alert, with a good fund of knowledge, and without signs of depression. *See id.* Substantial evidence of record, namely, that medical evaluation, thus supports the finding that petitioner was not prevented from timely filing the request.

■ Moreover, the AJ correctly determined that petitioner could not rely, for an excuse, on the failure of her attorney to file the request on her behalf, even though the attorney received a copy of OPM's dismissal ten days before the request for reconsideration was due. *See Rowe v. Merit Sys. Protection Bd.,* 802 F.2d 434, 437–38

(Fed.Cir.1986) ("It is well settled that a person is bound by the consequences of his representative's conduct, which includes both his acts and omissions.... After all, as the saying goes, 'it was his head that was on the chopping block,' and not his attorney's. He had a personal duty to monitor the progress of his appeal at all times and not leave it entirely to his attorney.").

The AJ correctly applied *Rowe* to the facts of this case, *Azarkhish,* slip op. at 4, and there is substantial evidence to support the AJ's finding that petitioner was not prevented from timely filing her request for reconsideration. Therefore, we do not reach the issue of whether OPM abused its discretion in denying petitioner's untimely request for reconsideration because 5 C.F.R. § 831.109(e)(2) provides OPM discretion in extending the time for requesting reconsideration only upon a showing of either lack of knowledge of the time limit or prevention. Here, substantial evidence supports the finding that neither was demonstrated.

## II

The full Board denied review of the AJ's initial decision and petitioner contends that the Board abused its discretion. The Board's regulations address review of initial decisions at 5 C.F.R. § 1201.115(c) (1990) and 5 C.F.R. § 1201.117 (1990).[2]

*5 C.F.R. § 1201.115(c)(1)*

■ Upon seeking review of the AJ's decision by the full Board, petitioner submitted two additional medical reports which were prepared after the AJ rendered his decision. The Board could have granted her petition for review based on these two

factors articulated in *Alonzo v. Department of Air Force,* 4 MSPR 180, 184 (1980), do not enter into the analysis in this case. *Alonzo* addressed whether "good cause," a more lenient standard, was demonstrated for the untimely filing of an appeal *to the Board* under MSPB's regulation, 5 C.F.R. § 1201.12, not whether petitioner met narrower factual criteria under OPM's regulation, 5 C.F.R. § 831.109(e)(2), for discretionary extension of the time for filing a request for reconsideration *with OPM.* Since we cannot say the latter regulation violates the statute it

implements, we have no choice but to uphold its application to the facts, if properly found.

**2.** 5 C.F.R. § 1201.115(c) provides two bases for granting a petition for review: "(1) New and material evidence is available that, despite due diligence, was not available when the record closed; or (2) The decision of the Judge is based on an erroneous interpretation of [a] statute or regulation." Only 5 C.F.R. § 1201.115(c)(1) concerning new evidence arguably applies to the facts of this case.

reports, if the reports were "[n]ew and material evidence" "that, despite due diligence, was not available when the record closed." 5 C.F.R. § 1201.115(c)(1). The two additional medical reports were new, *i.e.*, prepared after the AJ rendered his decision, and they were material to the issue of whether petitioner was prevented from timely filing the request for reconsideration. However, petitioner did not demonstrate to the full Board, nor did she argue to this court that "despite due diligence" the two reports were "not available when the record closed" on May 12, 1989. Since the reports concerned her condition in the fall of 1988, they could have been requested and written any time thereafter. Because petitioner has failed to make a showing of due diligence and prior unavailability of the reports (or, at the least, present that argument to the full Board and this court), we simply cannot hold that the full Board abused its discretion in denying review of the AJ's initial decision under 5 C.F.R. § 1201.115(c)(1).

*5 C.F.R. § 1201.117*

█ Initially, it is not beyond question whether petitioner even has standing to contest the Board's declining to *sua sponte* reopen the appeal. Assuming, without deciding, that she has standing, Congress explicitly granted the full Board authority to reopen any initial decision upon its own motion. 5 U.S.C. § 7701(e)(1)(B) (1988). That authority was implemented in 5 C.F.R. § 1201.117 which states that the full Board "may reopen an appeal and reconsider a decision of [an AJ] on its own motion at any time." That "reserved discretion" to reconsider an agency decision was not exercised here. *See Dunning v. National Aeronautics and Space Admin.*, 718 F.2d 1170, 1173 (D.C.Cir.1983) (Scalia, J.).

Petitioner has a heavy burden to demonstrate that the full Board abused its discretion under section 1201.117, as the full Board has "broad discretion" in deciding which initial decisions to review *sua sponte*. *Schaffer v. Merit Sys. Protection Bd.*, 751 F.2d 1250, 1254 (Fed.Cir.1985) (discussing 5 C.F.R. § 1201.115, a regulation

setting forth the bases for granting a petition for review of an initial decision).

Our predecessor court has stated that the reserved discretion of the predecessor of the MSPB to reopen a prior decision is "absolutely essential to the even administration of justice." *Bookman v. United States*, 197 Ct.Cl. 108, 453 F.2d 1263, 1265 (1972) (concerning the Civil Service Commission). Thus, the policy goal behind section 1201.117 presumably is aimed at assuring consistency between and among initial decisions. Here, there is simply no evidence that the AJ's decision resulted in the petitioner being subjected to a hardship not faced by others who file applications for disability retirement untimely and then file untimely requests for reconsideration, without proving an excuse cognizable under the regulation. As the Supreme Court noted: "Whenever a question concerning administrative ... reconsideration arises, two opposing policies immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching what, ultimately, appears to be the right result on the other." *Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 321, 81 S.Ct. 1611, 1617, 6 L.Ed.2d 869 (1961). Even if we give all weight to the policy of reaching the "right result" in this case, and none to the need for the finality of administrative decisions, when we review the two additional medical reports submitted to the full Board, we cannot say the AJ clearly did not reach the "right result."

One report, written in July, 1989, by a psychiatrist, was based on speculation about petitioner's mental functioning in the fall of 1988. The psychiatrist did not see petitioner during the time period at issue, late August through early October, 1988, and indeed had not seen her for nearly two years prior thereto. Pet.App. at 36. The second report is equally unconvincing. Also written in July, 1989, it contained a physician's conclusion that "chronic pain as well as [her] medications would make her unable to respond appropriately to various legal and administrative deadlines." *Id.* at 34. That conclusion is supported only by the statement that the medications petition-

er was taking during the fall of 1988 "are certainly capable of affecting her judgment." *Id.* The physician did not opine that the medications *did* affect petitioner's judgment during the time period at issue and it does not follow that because medications could have affected petitioner's abilities, they did. Finally, as this report was written by the very same physician who wrote the October, 1988 report which was contemporaneous and contrary, the later report does not seem compelling. Both medical reports were written well after the critical time period, were based on speculation, and, because they concerned capability to understand and act on legal matters, were beyond the expertise of the physician and psychiatrist, whose expertise is limited to matters within a reasonable degree of medical certainty. They are, thus, not compelling evidence that the correct result was not reached by the AJ. Certainly we cannot hold that the full Board abused its discretion, under 5 C.F.R. § 1201.117, in failing to reopen this appeal and reconsider the appeal on the basis of these two letters.

## CONCLUSION

The AJ's decision rested on a finding that is not unsupported by substantial evidence, and the full Board did not abuse its discretion in declining to review the AJ's decision. Accordingly, that decision must be

AFFIRMED.