**Douglas M. WRIGHT, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

No. 98–3260.

United States Court of Appeals, Federal Circuit.

June 15, 1999.

Barbara Harvey, of Detroit, Michigan, for petitioner.

Robert P. Sinderman, Jr., Attorney, Legal Policy, United States Postal Service, of Washington, DC, for respondent. With him on the brief was R. Andrew German, Managing Counsel.

Before MAYER, Chief Judge, RADER and BRYSON, Circuit Judges.

MAYER, Chief Judge.

Douglas M. Wright appeals the decision of the Merit Systems Protection Board, Docket No. CH0752950916–B–1 (December 1, 1997), which became final on May 20, 1998, and affirmed his removal from the United States Postal Service. Because the board improperly discredited testimony, we reverse in part, vacate in part and remand.

### Background

Wright began working as a mailhandler in Kalamazoo, Michigan, in 1993. On March 6, 1995, Supervisor of Delivery Operations Laura Vasquez, against whom Wright, a union steward, had filed labor grievances in the past, questioned him about his absence from his work area. They began to argue and, according to Vasquez, Wright shoved a mail hamper into her as she turned to leave. Wright denies this allegation and a co-worker who observed the argument, Randall James, testified that he did not see Wright hit Vasquez with a hamper.

Wright and Vasquez went to the office of Kathleen Blodgett, the Acting Manager

of Distribution Operations, where they continued to argue. Leroy Robinson, another supervisor, escorted Wright out of Blodgett's office and Vasquez left to call the Postal Inspection Service from her office. While Wright was talking to his wife, Anita Wright, also a postal worker, in the corridor outside the offices, Robinson summoned him to return. Wright then followed Robinson back to Blodgett's office. Vasquez also began walking to Blodgett's office, following Wright. Robinson testified that he heard Vasquez call out his name and, after turning around, saw her leaning against the wall.

Vasquez states that after she began walking behind Wright he slowed down and hit her on her side, forcing her into the wall. Wright asserts that he did not slow down or initiate contact with Vasquez; rather, she tried to force her way past him and lightly bumped him. Anita Wright, the only other eyewitness to this incident, testified that Vasquez brushed up against Wright in an attempt to squeeze by him, but did not hit the wall.

The Postal Service charged Wright with improper conduct for engaging in a verbal and physical altercation with a supervisor, and for creating an unpleasant work environment. On June 3, 1995, the Postal Service removed him. In an October 31, 1995 initial decision, the administrative judge affirmed his removal under the altercation charge, but denied the charge of creating an unpleasant work environment. The administrative judge fully credited Vasquez' account and found it to be consistent with the testimony of Robinson and James.

The Postal Service also presented evidence that Wright had failed to fully disclose criminal convictions on his employment application. The administrative judge concluded that he had intentionally falsified his application and therefore rejected his testimony as lacking credibility.

Moreover, the administrative judge discredited Anita Wright's testimony because of her "vested interest" as Wright's wife and because she testified that she only wrote one statement, although there were two in her handwriting. The administrative judge also rejected Wright's disparate treatment defense because, *inter alia,* his evidence consisted of disciplinary action resulting from a settlement.

Wright filed a petition for review, arguing in part that the administrative judge did not consider evidence that Vasquez falsified a workers' compensation claim and that she had a criminal arrest record. In refusing to consider the character evidence against Vasquez, the board found that Wright did not present it to the administrative judge and that it was not material. *See id.* at 19. However, the board concluded that Anita Wright's two statements did not undermine her credibility because she was justifiably confused at the hearing. *See id.* at 21. The board also held that a familial interest cannot, by itself, discredit a witness' testimony. *See id.* at 22. The board vacated the initial decision and remanded to the administrative judge. *See Wright v. United States Postal Serv.,* 72 M.S.P.R. 18 (1996).

On remand, the administrative judge affirmed Wright's removal in a December 1, 1997 decision that was virtually identical to the one in 1995. However, in continuing to refuse Anita Wright's testimony, the administrative judge held that she was not a credible witness because her testimony differed from Vasquez' and Robinson's and, as Wright's spouse, she had a pecuniary interest in the outcome. The board denied Wright's petition for review and he appeals.

## Discussion

We must affirm the board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994). On that standard, we cannot affirm here.

 Wright argues that the board's finding that he intentionally falsified his employment application violates his right to due process. He is correct that "[t]he core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson,* 522 U.S. 262, 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998). Nevertheless, evidence of the falsification was clearly in the record; indeed, he testified about it before the administrative judge. Impeaching Wright's credibility with this evidence was not a violation of due process.

The board's refusal to consider evidence impeaching Vasquez' credibility is another matter, however. Wright objects that the board completely discredited his version of the events, yet accepted Vazquez' testimony in its entirety despite evidence of her criminal record, fraudulent workers' compensation claim, and bias against him. There appears to be a discrepancy about when Wright attempted to introduce evidence of her arrests and fraudulent claim. He contends in his brief that the administrative judge refused to admit the evidence at a prehearing conference. Although the Postal Service does not challenge this assertion, the board's 1996 opinion, *see* 72 M.S.P.R. at 19, and Wright's 1996 petition for review suggest that he learned of this evidence after the first initial decision. Therefore, we remand so that the board may determine whether evidence of Vasquez' criminal record and fraudulent workers' compensation claim was presented before the record was closed. *See* 5 C.F.R. § 1201.58 (1999).

 Even if Wright introduced this evidence after the close of the record, how-ever, "[t]he Board could have granted [his] petition for review based on [the new evidence], if [it was] '[n]ew and material evidence' 'that, despite due diligence, was not available when the record closed.'" *Azarkhish v. Office of Personnel Management,* 915 F.2d 675, 678–79 (Fed.Cir.1990) (quoting 5 C.F.R. § 1201.115(c)(1) (1990), currently 5 C.F.R. § 1201.115(d)(1) (1999)). The board held that Wright failed to present new or material evidence. *See* 72 M.S.P.R. at 19–20. While the timing of its introduction is unclear, we reject the board's conclusion that the evidence is not material. The board cited *Bucci v. Department of Education,* 42 M.S.P.R. 47, 55 (1989), for the proposition that new evidence regarding a witness' credibility generally is not considered material and we agree. *See Mosely v. Department of Navy,* 229 Ct.Cl. 718, 722 (1981). We also agree with *Bucci's* holding that "new evidence is ... material ... [if it] is of sufficient weight to warrant an outcome different from that of the initial decision." 42 M.S.P.R. at 55; *cf. Azarkhish,* 915 F.2d at 679 (finding medical reports that provided excuse for employee's delay in filing to be material). Thus, evidence that impeaches the credibility of a witness whose testimony is the sole basis for an employee's removal cannot be characterized as immaterial.

 If the board finds that Wright failed to timely introduce the evidence it may still reopen the record or review the initial decision *sua sponte. See* 5 U.S.C. § 7701(e)(1)(B) (1994); 5 C.F.R. § 1201.118 (1999); *Azarkhish,* 915 F.2d at 679; *Connolly v. United States Dep't of Justice,* 766 F.2d 507, 511 (Fed.Cir.1985). The board has broad discretion in deciding whether reconsideration of a decision is necessary to preserve consistency or achieve the "right result." *See Azarkhish,* 915 F.2d at 679; *Schaffer v. Merit Sys. Protection Bd.,* 751 F.2d 1250, 1254 (Fed. Cir.1985). There is ample justification for

the board to exercise this discretion here. Wright's falsification of his employment application is a legitimate factor in weighing his credibility, as is evidence of Vasquez' false workers' compensation claim, bias, and—possibly—arrest record. The administrative judge discounted virtually all evidence that supports Wright, yet accepted Vasquez' testimony in its entirety. The board, therefore, should carefully consider whether its refusal to reopen the record would produce an inconsistent or wrong result. *See Azarkhish*, 915 F.2d at 679. Moreover, we leave it to the board to decide whether it is appropriate to impeach Vasquez' credibility with evidence of her arrests, if otherwise entered into the record.

■ Wright also argues that the board erred in discrediting his wife's testimony. We agree. In her first initial decision, the administrative judge declined to consider Anita Wright's testimony because of spousal interest. The board reversed, holding that familial interest "cannot, by itself, support a finding that her testimony was not credible." 72 M.S.P.R. at 22. On remand, the administrative judge again discredited Anita Wright's testimony because:

> Based on the presence of a bruise on Ms. Vasquez's shoulder and Mr. Robinson's testimony that he saw Ms. Vasquez 'up against the wall,' I find that Ms. Vasquez did indeed fall against the wall.... Either Ms. Wright did not see this happen or her testimony is not truthful.... Additionally, Ms. Wright is the appellant's wife and admitted she has a vested interest in seeing the appellant win this appeal. Thus, a potential bias exists because of her direct pecuniary interest in the outcome of the appeal, lessening the weight of her testimony.

The administrative judge cited this evidence for the first time in her 1997 decision. Robinson's testimony and the existence of a bruise, although it gives circumstantial support to Vasquez' story, do not sustain the conclusion that Anita Wright either did not see the incident or was lying. Robinson stated that Vasquez did not appear to have been knocked off her feet and that "I guess she just leaned against the wall." Anita Wright testified that Vasquez was two inches from the wall, rather than falling or leaning against it. This version is more consistent with Robinson's testimony than ·the contention by Vasquez that she lost her balance and was bent over. Therefore, it appears that this purported inconsistency was mere pretext for discrediting Anita Wright's testimony based on her spousal interest.

■ A familial interest, while relevant, is not sufficient to disregard a witness' testimony. *See Regennitter v. Commissioner of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir.1999) ("We have explained, however, that '[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.' ") (internal citation omitted); *Huffington v. Nuth*, 140 F.3d 572, 581 (4th Cir. 1998) ("We must evaluate the testimony of [the defendant's] own father in light of the potential bias inherent in such testimony."). We take a similar view of a spouse's testimony. *See generally Seal–Flex, Inc. v. Athletic Track and Court Constr.*, 98 F.3d 1318, 1323 (Fed.Cir.1996); *Ferrando v. Department of Transp., Fed. Aviation Admin.*, 771 F.2d 489, 490, 492 (Fed.Cir. 1985). The board, therefore, cannot refuse to consider testimony simply because the witness has a familial interest.

In its 1996 decision, the board correctly reversed the administrative judge's dismissal of Anita Wright's testimony. *See* 72 M.S.P.R. at 22. After remand, however, the board allowed the administrative judge, purportedly relying on a "pecuniary

interest," to again discredit her testimony. This interest is based solely on her marriage to Wright and the board should not have allowed the administrative judge to do indirectly what it expressly forbade her to do directly. Discrediting testimony that supports Wright merely because it comes from his wife, while fully crediting the testimony of Vasquez despite evidence of her lack of credibility, was arbitrary. *See Grubka v. Department of Treasury,* 858 F.2d 1570, 1574 (Fed.Cir.1988) (reversing because the administrative judge "show[ed] undeniable bias" against the petitioner and its credibility determination was "arbitrary, capricious, an abuse of discretion and unsupported by substantial evidence"). Consequently, we reverse the board's holding that Anita Wright's testimony is not to be credited and remand so that it may be properly considered.

 We are mindful that credibility determinations by the board are "virtually unreviewable." *See Hambsch v. Department of Treasury,* 796 F.2d 430, 436 (Fed. Cir.1986). This special deference "simply recognizes the reality that the conduct of a witness while testifying may fairly detract from the written word." *Jackson v. Veterans Admin.,* 768 F.2d 1325, 1331 (Fed.Cir. 1985) ("The MSPB must afford special deference to the presiding official's findings respecting credibility where the presiding official relies expressly or by necessary implication on the demeanor of the witnesses."). Here, however, the board dismissed testimony helpful to Wright based on considerations unrelated to the conduct of witnesses at the hearing. These rulings are undeserving of the higher level of deference given to credibility determinations that are based on a witness' demeanor. *See Chauvin v. Department of Navy,* 38 F.3d 563, 566 (Fed.Cir.1994) ("[T]he board must give special deference to the [administrative judge's] factual findings that are based ... on the demeanor of a witness."); *DeSarno v. Department of Commerce,* 761

F.2d 657, 661 (Fed.Cir.1985) (affirming presiding official's credibility determinations because it was based on witnesses' demeanor); *Griessenauer v. Department of Energy,* 754 F.2d 361, 364 (Fed.Cir. 1985) (same).

 Wright also argues that the board erred in rejecting his affirmative defense of disparate treatment. However, the board correctly refused to consider the agency's settlement of another employee's grievance as evidence of disparate treatment. *See Bergh v. Department of Transp., Fed. Aviation Admin.,* 794 F.2d 1575, 1577–78 (Fed.Cir.1986). Finally, we decline to consider Wright's claim that his removal violated section 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1994), because it was raised for the first time on appeal. *See Sanders v. United States Postal Serv.,* 801 F.2d 1328, 1331–32 (Fed.Cir.1986).

### Conclusion

Accordingly, the decision of the board is reversed in part, vacated in part and the case is remanded for further proceedings consistent with this opinion.

*REVERSED IN PART, VACATED IN PART AND REMANDED.*