NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3230

THOMAS F. CRUISE,

Petitioner,

v.

SOCIAL SECURITY ADMINISTRATION,

Respondent.

_____

DECIDED: February 13, 2006

_____

Before LOURIE, Circuit Judge, CLEVENGER, Senior Circuit Judge, and BRYSON,
Circuit Judge.

PER CURIAM.

## DECISION

Thomas F. Cruise petitions for review of a decision of the Merit Systems
Protection Board, Docket No. BN-0752-03-0066-I-1, affirming the decision of the Social
Security Administration to remove Mr. Cruise from federal service. We affirm.

## BACKGROUND

At the time of his removal, Mr. Cruise worked as a Criminal Investigator at the
Boston office of the Social Security Administration's Office of Inspector General. The
agency removed him in January 2003, based on its finding that he acted improperly by

using his position and the agency's resources to gain an advantage in a lawsuit filed by his son, Patrick Cruise.

Patrick Cruise worked in the Miami, Florida, office of the United States Secret Service when he was hospitalized in 1999. According to Thomas Cruise, while Patrick was at the hospital he was administered a drug test that erroneously indicated a positive result for drug use. Thomas Cruise alleges that Shawn Schaefer—who worked at the hospital where Patrick Cruise was treated—improperly disclosed the test result to her husband, Merek Schaefer, who worked at the Miami office of the Secret Service. Patrick Cruise was later terminated from the Secret Service on other grounds and filed a lawsuit in 2001 stemming from his hospitalization.

According to the agency's notice of proposed removal, Thomas Cruise used his position as a law enforcement officer and his access to agency records to assist Patrick Cruise with his lawsuit. Specifically, the agency alleged that on June 29, 2001, Thomas Cruise accessed information on the "Autotrak" database pertaining to Shawn Schaefer, her husband Merek Schaefer, and her mother Karen Tuttle. "Autotrak" is a proprietary data service available to several different law enforcement agencies. It provides some information beyond that in the agency's records, and allows the user to look up information such as a person's address, social security number, and driver's license number. The agency alleged that Thomas Cruise also accessed the Social Security Administration's own records pertaining to Ms. Tuttle and the Schaefers. Those records include current and past addresses, employment and earning histories, and social security numbers for all persons in the agency's database. After acquiring personal information about Ms. Tuttle and the Schaefers, Thomas Cruise went to their residence

in Maryland on July 22, 2001, and on September 4, 2001. During the July 22 visit, according to the agency, Mr. Cruise appeared at the Schaefers' residence with a stranger and attempted to discuss matters related to his son's termination and his lawsuit. The stranger spoke with the Schaefers' three-year-old child, and Mr. Cruise commented to the Schaefers about taking their home, having Merek Schaefer fired from the Secret Service, and including the Schaefers in Patrick Cruise's lawsuit if they did not cooperate with him. During the September 4 encounter, Mr. Cruise asked Ms. Tuttle about the whereabouts of Shawn Schaefer and wrote down Ms. Tuttle's license plate number. Shortly thereafter, Shawn Schaefer filed criminal charges of harassment and trespass against Mr. Cruise, and on September 9, 2001, Ms. Tuttle wrote a letter to the agency describing Mr. Cruise's conduct and stating that she feared that Mr. Cruise might try to interfere with her Social Security benefits.

On November 4, 2001, the agency proposed Mr. Cruise's removal. The notice of proposed removal contained four charges: (1) "Unauthorized Access of SSA [Social Security Administration] records for Personal Gain and/or the Benefit of Another," (2) "Unauthorized Access of SSA records in an Attempt to Personally Gain and/or Benefit Another," (3) "Misuse of SSA Resources," and (4) "Conduct Unbecoming a Federal Law Enforcement Officer." Each charge had several supporting specifications, and the second charge was proposed as an alternative to the first. On January 3, 2003, the deciding official sustained charges 1, 3, and 4, stated that he would have sustained the alternative charge 2 if it had been necessary to do so and directed that Mr. Cruise be removed from his position as of January 11, 2003.

Mr. Cruise appealed to the Merit Systems Protection Board, contesting the charges and asserting that his removal violated the Whistleblower Protection Act. The Board held a hearing and issued a decision sustaining charges 1, 3, and 4. Although the administrative judge did not sustain all seven of the specifications supporting charge 4, she found that the specifications she did sustain were sufficient to support the charge. The administrative judge did not address charge 2 because it was an alternative charge, not specifically sustained by the agency, and therefore was not before her. After sustaining the charges, the administrative judge held that the charges had a nexus to Mr. Cruise's employment and that removal was a reasonable penalty. Finally, the administrative judge held that, although Mr. Cruise had made disclosures protected by the Whistleblower Protection Act and although those disclosures were a contributing factor in his removal, the agency had met its burden of proof of showing that it would have removed Mr. Cruise even in the absence of his disclosures. The administrative judge's decision became final when the full Board denied Mr. Cruise's petition for review. Mr. Cruise now petitions for review by this court.

## DISCUSSION

Mr. Cruise makes several arguments in an effort to overturn the Board's decision. First, he argues that the administrative judge erred in sustaining charge 1 because the agency did not prove all elements of the charge. Second, he argues that the administrative judge failed to acknowledge "serious acts of perjury" at the hearing on the part of witnesses who testified against him. Third, he argues that the administrative judge erred by refusing to admit certain evidence related to the agency's treatment of similarly situated employees. Fourth, he argues that the administrative judge's analysis

of the reasonableness of the penalty in light of the <u>Douglas</u> factors was flawed. Finally, Mr. Cruise argues that the administrative judge erroneously denied a request to disqualify herself for bias against Mr. Cruise's attorney.

The agency's first charge against Mr. Cruise was "Unauthorized Access of SSA records for Personal Gain and/or the Benefit of Another." The two specifications supporting that charge were:

> 1. On June 29, 2001 you accessed Shawn Schaefer's record without authorization and obtained knowledge and/or information from her account.
>
> 2. Your access of this information benefited you and/or your son. Your query provided you with information regarding Shawn Schaefer's current and past places of employment as well as earnings. You also obtained the names of her parents.

The notice of proposed removal also listed four aggravating factors and referred to the Office of Inspector General's Data Policy, under which the charged conduct is a "category 3" violation, for which a first offense is punishable by removal. Mr. Cruise argues that the Board should not have sustained this charge because the agency did not show with sufficient specificity (1) what information Mr. Cruise actually accessed, or (2) in what way Mr. Cruise or his son may have "benefited" from any information that they accessed.

At the Board hearing, Paul Schmidt, an Information Technology Specialist for the agency, presented evidence showing that Mr. Cruise's six-digit PIN number was used on June 29, 2001, to access Shawn Schaefer's agency records. Mr. Schmidt also showed that the user executed seven queries with respect to Mrs. Schaefer's records, one of which would have retrieved her full name, date and place of birth, and parents' names, and the other of which would have revealed her employment and earnings

history. Mr. Schmidt acknowledged that he could not identify which options the user selected in the course of each query, or for which years the user requested records. For example, he explained that the earnings history query would have revealed that Mrs. Schaefer worked at the hospital that treated Patrick Cruise while Patrick was a patient only if, as part of the query, the user had requested a date range that included the dates of Patrick Cruise's hospital stay. Mr. Cruise argues that this shortcoming in the evidence is fatal to the charge. We disagree.

First, regarding Mr. Cruise's assertion that the agency did not prove what information he accessed, we note that Mr. Schmidt's testimony—which the administrative judge credited—showed that Mr. Cruise's PIN number was used in combination with queries that would have retrieved the information listed in the specification supporting the charge. Moreover, the circumstantial evidence showed that 23 days after a query was executed that would have retrieved Mrs. Schaefer's address, Mr. Cruise appeared at Mrs. Schaefer's residence in Maryland. From that evidence, it was reasonable for the administrative judge to find that it was more likely than not that Mr. Cruise accessed the information to which the specification referred. As to whether the agency proved that Mr. Cruise actually benefited from the information he accessed, the administrative judge reasonably concluded that Mr. Cruise benefited by confirming Mrs. Schaefer's place of employment and identifying her as a potential source of information in his inquiry regarding his son's case. Because the evidence was sufficient to show that Thomas Cruise accessed information that would confirm Mrs. Schaefer's employment at the hospital that treated Patrick Cruise and her marriage to Merek Schaefer, one of Patrick Cruise's former co-workers, the evidence was sufficient to

support the agency's charge that Mr. Cruise's accessing that information "benefited [him] and/or [his] son," as the agency charged. Substantial evidence thus supports the administrative judge's decision sustaining charge 1.

Mr. Cruise's second challenge to the Board's decision is that the administrative judge "failed to acknowledge serious acts of perjury" on the part of the witnesses who testified against him. Mr. Cruise bases his argument largely on the fact that the testimony of the agency's witnesses differed from his own. In addition, he points to what he considers flaws in the evidence against him, such as the fact that the official who proposed his removal stated that he had lost trust and confidence in Mr. Cruise, yet he allowed Mr. Cruise to remain at work for several weeks before he was placed on administrative leave. Mr. Cruise also notes that, although Karen Tuttle stated that no one helped her prepare her letter to the agency that precipitated the investigation against Mr. Cruise, the letter contains an instance of what could be described as "law enforcement jargon." While these and other points provide possible grounds for challenging the credibility of some of the witnesses, they fall far short of establishing that any of the witnesses perjured themselves, or that their testimony was "inherently improbable or discredited by undisputed evidence or physical fact," which is what is required to disturb an administrative judge's decision to credit a witness's testimony. Hanratty v. Dep't of Transp., 819 F.2d 286, 288 (Fed. Cir. 1987); see also Wright v. U.S. Postal Serv., 183 F.3d 1328, 1334 (Fed. Cir. 1999); Pope v. U.S. Postal Serv., 114 F.3d 1144, 1149 (Fed. Cir. 1997).

Mr. Cruise's third challenge to the Board's decision is that the administrative judge erred in refusing to admit an exhibit that would have established that the agency

did not fire two agents assigned to the same office as Mr. Cruise who engaged in a fistfight at the Boston Police Department firing range during the time when the agency was investigating Mr. Cruise. Mr. Cruise argues that the agency's failure to investigate or take action against the agents involved—who were, in Mr. Cruise's words, "similarly situated employees who were not Whistleblowers"—shows that the agency's decision to remove him was unduly harsh and improperly motivated. To challenge a decision of the Board on the basis of an erroneous evidentiary ruling, an appellant must demonstrate that the ruling was both prejudicial and an abuse of discretion. See Veneziano v. Dep't of Energy, 189 F.3d 1363, 1369 (Fed. Cir. 1999); Baker v. Dep't of Health & Hum. Servs., 912 F.2d 1448, 1457 (Fed. Cir. 1990); Curtin v. Office of Pers. Mgmt., 846 F.2d 1373, 1379 (Fed. Cir. 1988). Mr. Cruise does not explain why he believes the administrative judge's evidentiary ruling was erroneous, but instead simply points to a portion of the hearing transcript. The hearing transcript shows that the administrative judge apparently rejected his exhibit because it was cumulative of testimony already in the record. Mr. Cruise's counsel elicited testimony from Leo Sullivan—the official who proposed Mr. Cruise's removal—to the effect that he witnessed the incident at the Boston Police firing range and that the agents involved were only minimally disciplined. The agency did not dispute this, and Mr. Cruise's counsel offered no basis for admitting the exhibit other than that it would corroborate that testimony. Moreover, the administrative judge's decision cited this portion of Mr. Sullivan's testimony and accepted it as true. In light of the fact that the exhibit was cumulative and did not relate to an issue that was in dispute, Mr. Cruise has not shown that he was prejudiced by the exclusion of the exhibit.

Fourth, Mr. Cruise argues that the Board's analysis of the reasonableness of the penalty in light of the factors set forth in Douglas v. Veterans Admin., 5 M.S.P.R. 280, 305-06 (1981), was flawed. Specifically, Mr. Cruise argues that removal was too harsh a penalty in light of the fact that the only charge in the Notice of Proposed Removal that carries a penalty of removal—charge 1—was unsustainable. Because we have upheld the administrative judge's decision sustaining charge 1, we reject this argument. The administrative judge sustained all of the agency's charges and performed a thorough analysis of the Douglas factors, in which she considered, inter alia, that some of the specifications underlying the charges were not fully proved. We discern no errors of law or abuse of discretion in the administrative judge's weighing of the Douglas factors, and we therefore do not reverse the Board's decision on that basis.

Finally, Mr. Cruise argues that he did not receive a fair hearing because the administrative judge was biased against his attorney. In support of his claim, he argues that his counsel "provided evidence that the [administrative judge] had exhibited such a level of antagonism towards Appellant's counsel that it caused her to knowingly make false statements during a previous Board appeal," and he points to a motion for interlocutory appeal that was filed below. This argument is meritless.

The alleged "false statements during a previous Board appeal" refer to a verbal exchange in a different appeal that did not involve Mr. Cruise, between the administrative judge in Mr. Cruise's case and Ernest Hadley, who represented Mr. Cruise. In that other appeal, Mr. Hadley asked the administrative judge for the opportunity to file written closing arguments within two weeks of his receipt of the transcript. The administrative judge granted Mr. Hadley's request, but during the

exchange indicated that she felt some amount of time pressure and that if she was unable to issue a decision in the case by the end of the calendar year, "someone else will have to come in and do it, because they'll remove me."

In Mr. Cruise's motion for disqualification he argued that the administrative judge's statement was an implicit (and false) statement that she was subject to a "performance improvement plan," and that the statement showed that the administrative judge was biased against Mr. Hadley (and thus unable to be impartial in Mr. Cruise's case). On appeal to this court, Mr. Cruise merely references his motion for interlocutory appeal seeking the administrative judge's recusal and states that he did not receive a fair trial. Neither Mr. Cruise's submissions to this court, nor anything else in the record reflects any basis for inferring bias on the part of the administrative judge, and we therefore decline to reverse the Board's order on that basis.