NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CAMBRA L. LUCAS,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2014-3158

---

Petition for review of the Merit Systems Protection Board in No. SF-0845-13-0413-I-1.

---

Decided: June 5, 2015

---

CAMBRA L. LUCAS, Ripon, CA, pro se.

ERIC LAUFGRABEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM.

---

Before REYNA, PLAGER, and TARANTO, *Circuit Judges.*

PER CURIAM.

Cambria Lucas appeals from the final order of the Merit Systems Protection Board ("Board") affirming that she was not entitled to a waiver of her repayment obligation arising out of overpayment of post-retirement annuity benefits. Because the Board failed to consider new and material evidence in denying Lucas' petition, we *vacate* and *remand* for limited further proceedings.

## I. BACKGROUND

### A. Lucas' Retirement And Disability Benefits

Lucas was employed by the Federal Government between 1985 and 2007. In late 2006, Lucas applied for disability retirement benefits under the Federal Employees Retirement System (FERS) and for disability benefits through the Social Security Administration (SSA). FERS benefits take the form of a monthly annuity payment. The Office of Personnel Management ("OPM"), the agency that administers FERS annuity benefits, requires applicants to notify OPM as soon as they are awarded SSA benefits in order to reduce the annuity by the entire SSA benefit amount for the first 12 months and by a smaller amount thereafter.

On March 26, 2007, OPM sent Lucas a letter notifying her that her application for FERS disability benefits had been approved. Resp't's App. 95. FERS annuity benefits are usually approved before SSA benefits and are reduced after the annuitant receives SSA benefits. OPM's letter explained that the initial payments made by OPM would be "interim payments" until OPM was able to finally calculate the precise amount of her benefits once the SSA benefit amount was determined. The letter advised Lucas that the interim payment was "usually about 80 percent of the amount of your actual annuity payment." *Id.* The letter also informed Lucas that she was required to apply

for SSA benefits and to immediately inform OPM of her SSA approval. *Id.*

On March 27, 2007, Lucas was approved for SSA benefits in the amount of $1,755.00 per month. *Id.* at 93. Lucas claims that she notified OPM that she had been approved for SSA benefits but acknowledges she has no proof of that notification. *See* Pet'r's App. 27.

On April 19, 2007, OPM sent Lucas a statement that set out the amount of her interim benefits, less Federal Income Tax, for the period of February 3, 2007 through March 30, 2007. Below the statement of benefits, boilerplate language explained that the government was paying interim benefits "until we [OPM] can determine the exact amount to which you are entitled" once Lucas' SSA benefits were determined. Resp't's App. 89. The boilerplate explained that interim payments were being made "at a rate that should be less than [Lucas'] actual earned annuity." *Id.* OPM used the lower rate so as "to avoid an overpayment which would have to be received from [Lucas'] future annuity payments." *Id.* In the event of overpayment, Lucas would be notified and have an opportunity to respond before OPM would start "withhold[ing] the excess from future annuity payments." *Id.* The letter also informed Lucas that her health benefits and life insurance coverage would continue without interruption, but that those deductions would not be itemized in the interim payment statements. *Id.* at 90.

## B. Overpayment Of Benefits

Although Lucas claims to have notified OPM of her approval for SSA benefits, OPM did not reduce Lucas' annuity benefits. As such, Lucas continued to receive benefits at the same rate as her interim award amount for over three years. *Id.* at 84. During that time, Lucas repeatedly contacted OPM to discuss the amount of her annuity benefits, concerned that she was not receiving the full amount to which she was entitled. Pet'r's App. 60.

After reviewing Lucas' file in 2010, the government determined that Lucas was being overpaid. Because the government had not deducted the SSA amount or the premiums for Lucas' health benefits and life insurance from her annuity benefits, Lucas had received an excess of $89,675. Resp't's App. 85. On July 20, 2010, the government sent Lucas a notice of amount due because of overpayment. *Id.* In the notice, the government proposed that Lucas repay the overpayments by making 303 monthly payments of slightly less than $300. *Id.* The notice informed Lucas that she could accept the government's offer or counter with a lesser compromise amount. *Id.* at 84.

## C.  Procedural History

Lucas rejected the government's offer and requested that OPM reconsider its determination of the amount of excess payments. She also sought waiver for overpayment on the basis she was not at fault, that she detrimentally relied on the agency's overpayment, and that recovery would be unconscionable under the circumstances. In April 2013, OPM issued a decision affirming the overpayment, though adjusting the amount to $89,636. *Id.* at 75. Regarding Lucas' waiver argument, OPM determined that, while Lucas was not at fault for the overpayment, she had not established either that she detrimentally relied on the overpayment or that recovery would be unconscionable. *Id.* at 77. Thus, OPM denied Lucas' request for waiver.

Lucas appealed to the Board. The administrative judge held a hearing in the case on June 14, 2013, and closed the record at the end of the hearing. *Id.* at 35. The administrative judge issued an initial decision affirming both that OPM had established the correct amount of overpayment, *id.*, and that Lucas had not detrimentally relied on OPM's overpayment, *id.* at 42. Regarding unconscionability, the administrative judge found that

Lucas presented no evidence that OPM had learned that Lucas was receiving SSA benefits, for instance through its routine checks of the SSA's computer systems, "until shortly before it finalized its calculations" in 2010. *Id.* at 42. Though the administrative judge acknowledged that it was "troubling that it took OPM so long to find and correct any of the mistakes with [Lucas'] annuity," the judge found OPM's conduct did not rise to the level of unconscionability. *Id.* at 43.

On August 1, 2013, Lucas filed a petition for review of the Board's initial decision. On August 26, 2013, OPM filed its response and attached a document that it claimed it had inadvertently omitted from the agency appeal file. *Id.* at 57. The document was a Social Security Administration printout, entitled "SSA Response Screen," from October 2008, indicating that Lucas was entitled to SSA benefits and that she had received payments in 2007. *Id.* at 58. Lucas responded, arguing that the SSA Response Screen document demonstrated that OPM had knowledge of the overpayment in 2008.

In May 2014, the Board affirmed the initial decision in a final decision, finding that Lucas again did not present sufficient evidence to demonstrate unconscionability or detrimental reliance. During review proceedings, Lucas cited an additional SSA printout for an individual OPM had mistaken for Lucas, arguing the printout circumstantially demonstrated OPM error in processing her alleged notification of benefits. Resp't's App. 4. Because Lucas had not cited this discrepancy as evidence in any earlier proceeding, the Board held that the mistaken SSA printout was neither new nor material. *Id.* at 5. The Board did not reference the October 2008 SSA Response Screen document in its opinion.

Lucas appeals the Board's denial of her petition for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II. New Material Evidence

The Board may grant a petition for review if the petitioner presents new and material evidence "that, despite due diligence, was not available when the record closed." *Azarkish v. Office of Pers. Mgmt.*, 915 F.2d 675, 679 (Fed. Cir. 1990) (quoting 5 C.F.R. § 1201.115(d)). New evidence is evidence that first becomes available after the record closes. 5 C.F.R. § 1201.115(d). Evidence is material if it "is of sufficient weight to warrant an outcome different from that of the initial decision." *Wright v. U.S. Postal Serv.*, 183 F.3d 1328, 1332 (Fed. Cir. 1999) (quotation marks and citation omitted).

Lucas argues that she presented new and material evidence which went unconsidered by the Board. Lucas points to the SSA Response Screen document that was not produced by OPM until after Lucas filed her petition for review with the Board. Pet'r's Br. 2–3. Lucas argues that OPM's failure to turn the document over to either the administrative judge or to her contravened an order from the administrative judge. *Id.* at 9. That response screen document, dated September 10, 2008, contains details related to Lucas' SSA payment history in 2007. Specifically, it shows that Lucas received SSA payments on May 1, 2007 and December 1, 2007. Pet'r's App. 26. Lucas contends that this document establishes that OPM was able to "view" the benefits she was receiving from SSA as early as 2008. Pet'r's Br. 3. She argues that because OPM had this information in 2008 and did not act on it until 2010, she is entitled to waiver of the obligation to repay the overpayment.

OPM concedes that the Board did not consider Lucas' SSA Response Screen document in its decision denying Lucas' petition for review. Resp't's Br. 12. But because it was in the record when the Board issued its final decision, OPM argues, we must presume that the Board considered it and found it to not be material. *Id.* at 13. OPM points

out that Lucas did not cite evidence that the Board did not consider Lucas' Response Screen document. *Id.* The government contends that the Response Screen document does not establish that OPM discovered Lucas' overpayments before July 2010, or that OPM delayed in responding to the overpayment after becoming aware of it. *Id.*

We find that Lucas' SSA Response Screen document constitutes new and material evidence. OPM admitted that the document was inadvertently "omitted from the agency appeal file" submitted to the regional Board. Resp't's App. 31. OPM further acknowledged that "the administrative judge and the appellant were not made aware of the document." *Id.* As such, the SSA Response Screen document was not available to Lucas until after she filed her petition for review, well after the administrative judge rendered the initial decision and the close of the record on June 14, 2013.

OPM was required by 5 C.F.R. § 1201.25 to produce all documents contained in the agency's record of the action. The government acknowledged it produced these documents minus Lucas' SSA Response Screen document. *Id.* at 25. Because Lucas had no knowledge that OPM was in possession of this critical document, or that it even existed, she could not have obtained the document prior to the close of the record by exercising due diligence. Accordingly, Lucas' SSA Response Screen document is new evidence.

The SSA Response Screen document shows that Lucas was receiving SSA benefits in 2007. In her informal reply brief, filed after OPM moved to admit the document, Lucas contended that the document's date, October 16, 2008, demonstrated that OPM had notice of her receipt of SSA benefits in 2008. Pet'r's App. 9. It appears that OPM did not respond to this argument, effectively conceding it to Lucas. Taken as true, Lucas' assertion

that OPM was on notice of her receipt of SSA benefits in 2008 could warrant a different outcome in her case.

In denying Lucas' petition for review, the Board made no mention of the late-submitted document. Yet, the Board found that OPM's expeditious adjustment of Lucas' annuity was a factor weighing against a finding that repayment under the circumstances would be unconscionable.[1] Resp't's App. 6. The Board relied on two cases to support its expediency finding, *Spinella v. Office of Personnel Management*, 109 M.S.P.R. 185 (2008) and *Taylor v. Office of Personnel Management*, 87 M.S.P.R. 214 (2000), in which long delays before adjustment of the annuity were not unconscionable because the agency acted promptly after discovering the overpayment. *Id.* If Lucas' assertion that the Board had notice of her receipt of SSA benefits since 2008 is correct, then OPM's adjustment of her benefits was not expeditious. This undermines one basis for the Board's conclusion that the delay was not unconscionable. As such, Lucas' SSA Response Screen document is also material evidence.

CONCLUSION

We have considered Lucas' other arguments and find them without merit. We *vacate* the Board's denial of Lucas' petition for review and *remand* for proceedings limited to the Board's consideration of whether new and material evidence in the form of Lucas' SSA Response Screen document would render recovery unconscionable under the circumstances.

---

[1] The Board determines whether recovery would be unconscionable by evaluating the totality of the circumstances, including whether "OPM failed to act expeditiously to adjust an annuity in the face of specific notice." *Simpson v. Office of Pers. Mgmt.*, 96 M.S.P.R. 52, 61 (2004).

**VACATED AND REMANDED**

COSTS

No costs.