Rafael ZAMOT, Petitioner,

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

No. 02–3321.

United States Court of Appeals, Federal Circuit.

June 23, 2003.

Rafael Zamot, of Jacksonville, Florida, pro se.

Joyce G. Friedman, Merit Systems Protection Board, of Washington, DC, for respondent. With her on the brief were Jeffrey Gauger and Michael Carney, Attorneys.

Before NEWMAN, MICHEL, and BRYSON, Circuit Judges.

Opinion for the court filed by Circuit Judge BRYSON. Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.

BRYSON, Circuit Judge.

Rafael Zamot appeals from a decision of the Merit Systems Protection Board, 91 M.S.P.R. 475, dismissing the appeal of his removal action for lack of jurisdiction. Because the Board did not abuse its discretion either in finding that Mr. Zamot failed to show good cause for the delay in filing his petition for review or in declining to reopen the case on its own motion, we affirm.

I

Mr. Zamot was employed by the United States Postal Service as a Postal Police Officer. On March 26, 2000, Mr. Zamot was involved in an altercation with another postal worker in a locker room at work. The Postal Service removed Mr. Zamot for "assaulting a fellow officer" in violation of the Postal Service policy prohibiting violence in the workplace.

Mr. Zamot appealed his removal to the Merit Systems Protection Board. The administrative judge assigned to the case issued an order to show cause, directing Mr. Zamot to address the question whether he qualified as an employee under 5 U.S.C. § 7511, and thus whether his case was within the Board's appellate jurisdiction. While Postal Service employees ordinarily do not fall within the Board's jurisdiction, preference-eligible veterans in the excepted service with one year of continuous service qualify as employees under the statutory definition of that term. *See* 39 U.S.C. § 1005(a)(4)(A); 5 U.S.C. § 7511(a)(1)(B). The administrative judge informed Mr. Zamot that 5 U.S.C. § 2108 defines a preference-eligible veteran as one who "served on active duty in the armed forces during a war, [or] in a campaign or expedition for which a campaign badge has been authorized." In addition, the administrative judge identified an Office of Personnel Management resource that lists qualifying campaigns and expeditions. Mr. Zamot requested additional time to gather the requisite evidence that he is a preference-eligible veteran. In accordance with Mr. Zamot's request, the administrative judge dismissed his appeal without prejudice on November 9, 2000, and gave Mr. Zamot three months to assemble supporting documentation and re-file the appeal.

In January 2001, Mr. Zamot timely refiled his appeal with the Board. He sub-

mitted a letter from the Chief of Naval Operations stating that Mr. Zamot had received a Meritorious Unit Commendation for the period April 1, 1988, to September 30, 1989. In a submission to the administrative judge, Mr. Zamot's representative stated that he obtained the letter from the Navy "with great difficulty" and that the Navy had informed him that "Naval JAG was consulted and that this letter should suffice for his purpose of Preference Eligibility/Jurisdiction before the US–MSPB." Mr. Zamot also submitted a military form listing decorations he had received, including a Sea Service Deployment Ribbon, a Navy Battle "E" Ribbon, and a First Good Conduct Medal.

The administrative judge ordered the parties to present arguments and evidence within 20 days addressing the jurisdictional issue of whether Mr. Zamot was preference-eligible. Mr. Zamot responded that while he was having difficulty obtaining additional documentation because much of it was classified information, he was "still in the process of strenuously attempting to secure additional documentation" and he "fully expects to be able to obtain further documentation very shortly, which will be immediately forwarded to your office." He also stated that he served on a "Warship [that] was on duty station in the Middle East in direct support of both Overt as well as Covert Combat Operations." The government objected to Mr. Zamot's request for more time and filed a motion to dismiss for lack of jurisdiction, arguing that Mr. Zamot had failed to show that he is a preference-eligible veteran and that there is no indication that the various ribbons and medal were awarded for a particular campaign or expedition.

On February 28, 2001, the administrative judge dismissed the appeal for lack of jurisdiction because Mr. Zamot had failed to establish that he had served in a campaign or expedition for which a campaign

badge had been authorized, as is required by 5 U.S.C. § 2108(1)(A). The administrative judge stated that the decision would become final unless Mr. Zamot filed a petition for review with the full Board by April 4, 2001.

Rather than file an appeal with the full Board, Mr. Zamot elected to pursue a complaint with the Equal Employment Opportunity Commission ("EEOC") in which he argued that he was a whistleblower who had been subject to discrimination. An administrative judge with the EEOC found that Mr. Zamot did not establish that he was discriminated against on the basis of race or retaliation for prior equal employment opportunity activity. The administrative judge then stated, "At best, the Complainant was a whistleblower, and retaliation for being a whistleblower is not within the jurisdiction of this forum." Meanwhile, Mr. Zamot, a member of the United States Army Ready Reserve, was called to active duty in October 2001.

On March 10, 2002, Mr. Zamot filed another submission with the Board. In that submission, he sought review as a whistleblower and asked the Board to reopen his case. He noted that the other employee who had been involved in the altercation that led to his removal was back at work after having successfully appealed to the Board, which had converted the employee's removal to a 60–day suspension. The Board treated Mr. Zamot's filing as a petition for review or to reopen the February 28, 2001, decision. The Clerk of the Board notified Mr. Zamot that his petition for review appeared to be untimely and directed Mr. Zamot to file, within 15 days of the Clerk's notice, a motion for waiver of the time limit, and to submit an affidavit or a signed statement showing good cause for the delay in filing. In an untimely submission through his representative, Mr. Zamot stated that he

had been called to active military duty, that his receipt of the Clerk's notice had been delayed, and that he had experienced trouble in communicating with his representative. Mr. Zamot requested a waiver of the time limit for filing his petition for review, stating that (1) he was "under the genuine impression or understanding that he no longer had any legal standing with the U.S. MSPB"; (2) he was "adjudged" to be a whistleblower by the EEOC and he was therefore within the Board's jurisdiction; and (3) neither he nor his representative had legal training.

The Board dismissed Mr. Zamot's petition for review as untimely filed and denied his request to reopen the appeal. The Board noted that, pursuant to 5 C.F.R § 1201.114, a petition for review must be filed within 35 days of the initial decision unless the petitioner shows good cause for the delay in filing. The Board held that Mr. Zamot's filing was untimely by nearly one year and that he had failed to show that he had exercised due diligence or ordinary prudence under the circumstances sufficient to establish good cause. The Board found that Mr. Zamot's untimeliness was not excused either by his pursuit of claims before the EEOC or by his pro se status. With respect to the request to reopen, the Board stated that the request was not filed within a reasonable period of time and that, even if timely, the request lacked merit because Mr. Zamot had neither identified clear and material errors nor presented new and material evidence. Mr. Zamot now petitions this court for review.

## II

### A

■ To establish good cause for a filing delay, an appellant must show that the delay was excusable under the circumstances and that the appellant exercised due diligence in attempting to meet the filing deadline. *Phillips v. United States Postal Serv.*, 695 F.2d 1389, 1391 (Fed.Cir. 1982). The factors bearing on whether there is good cause for an untimely filing include the length of the delay, whether the appellant was notified of the time limit, the existence of circumstances beyond the appellant's control that affected his ability to comply with the deadline, the appellant's negligence, if any, and any unavoidable casualty or misfortune that may have prevented timely filing. *See Walls v. Merit Sys. Prot. Bd.*, 29 F.3d 1578, 1582 (Fed. Cir.1994).

We have repeatedly stated that the waiver of a regulatory time limit based on a showing of good cause "is a matter committed to the Board's discretion and that this court will not substitute its own judgment for that of the Board." *Mendoza v. Merit Sys. Prot. Bd.*, 966 F.2d 650, 653 (Fed.Cir.1992) (en banc). We conclude that Mr. Zamot has not carried the heavy burden of establishing that the Board abused its discretion in finding that he failed to show good cause for the delay in filing his petition for review.

■ Mr. Zamot had 35 days from issuance of the initial decision to seek review, but he took a full year. Moreover, Mr. Zamot was notified of the time limit; the Board's decision explicitly informed him of the April 4, 2001, deadline for filing a petition for review. Although Mr. Zamot states that he and his representative had experienced difficulties in obtaining materials relating to Mr. Zamot's preference-eligible status, he merely had to file a piece of paper to serve as his petition for review in order to preserve his rights. The difficulty in obtaining evidence from the Navy may have been a circumstance out of Mr. Zamot's control, but the failure to file a document to serve as a petition for review was not. Finally, although Mr. Zamot argued to the Board that his military

service was a factor justifying the substantial period of delay, he was not on active duty for the first six months of that time period.

■ Mr. Zamot's brief in this court makes clear that his failure to file a timely petition for review was not the result of his military service, his pro se status, confusion about the appeal process, or the complexity of the preference-eligible issue. Instead, he acknowledges that he failed to file a petition for review because he regarded it as unlikely to succeed. Before the Board, he stated that he had not filed a timely petition for review because he was "under the impression or understanding that he no longer had legal standing" with the Board following the dismissal of his petition for lack of jurisdiction. In his informal brief in this court, Mr. Zamot states that he "had absolutely no reasonable expectation that the U.S.-MSPB would rule against itself at the Appeal Level, (i.e.Washington, D.C.) as the MSPB had already been quite clear. Therefore, I Appellant Zamot did not pursue the matter further with the MSPB at that time." As the Board correctly explained, an election not to pursue further remedies because of a belief that further review would be fruitless does not constitute a showing of good cause for a filing delay. *See Rodgers v. United States Postal Serv.*, 57 M.S.P.R. 172, 174 (1993). Accordingly, we do not believe that the Board abused its discretion in finding no good cause for the untimely filing of the petition for review.

## B

Pursuant to statutory authorization, 5 U.S.C. § 7701(e)(1)(B), the Board has provided by regulation that it may "reopen an appeal and reconsider a decision of a judge on its own motion at any time," 5 C.F.R. § 1201.118. The Board enjoys broad discretion in deciding whether to reopen particular appeals, and this court has stated that, even assuming we have the authority to review such a decision (an issue the court has left open), a party has a "heavy burden" in attempting to demonstrate that the full Board erred in exercising its discretion not to reopen. *See Nelson v. Fed. Deposit Ins. Corp.*, 83 F.3d 1375, 1377 (Fed.Cir.1996) ("Assuming, without deciding, that we may review the Board's decision not to reopen an appeal on its own motion ... for an abuse of discretion, we discern no such abuse...."); *Azarkhish v. Office of Pers. Mgmt.*, 915 F.2d 675, 679 (Fed.Cir.1990) ("[I]t is not beyond question whether petitioner even has standing to contest the Board's declining to *sua sponte* reopen the appeal. Assuming, without deciding, that she has standing, ... [p]etitioner has a heavy burden to demonstrate that the full Board abused its discretion...."). Assuming that we may review the decision not to reopen, we do not believe that the Board abused its discretion by declining to reopen Mr. Zamot's appeal.

■ During the period following the administrative judge's dismissal of the appeal without prejudice, Mr. Zamot was able to obtain some materials relating to his military service, but those materials did not satisfy the administrative judge that Mr. Zamot was entitled to preference-eligible status. In February 2001, Mr. Zamot informed the administrative judge through his representative that he "fully expects to be able to obtain further documentation very shortly; which will be immediately forwarded to your office." Notwithstanding that representation, however, he never submitted any additional documentation to the administrative judge, nor did he proffer any additional documentation to the full Board with his untimely petition for review. Even in this appeal he does not suggest that additional time would enable him to assemble the materials necessary to make the requisite showing. Although it

has been more than two years since the administrative judge dismissed his appeal, Mr. Zamot has not offered any suggestion that he is any closer to being able to show that he is a preference-eligible employee than he was on the day his appeal was dismissed.

Mr. Zamot could have sought to obtain additional evidence regarding his claim, or at least suggested why there was reason to believe additional time would enable him to obtain such evidence, but he has not. Instead, his submissions to the Board in March and April 2002 were directed mainly at asserting that he is a whistleblower, a claim over which the Board lacks independent jurisdiction because of his status as a Postal Service employee.

The Board noted that a request for reopening is granted only under unusual circumstances, such as when the initial decision contained clear legal errors or when a party has proffered new and material evidence that would warrant a different outcome. The Board correctly observed that Mr. Zamot had made no showing of any such legal error in the initial opinion or any new and material evidence that could affect the outcome of the case. Given the absence of any such showing in the materials before the Board, it was not an abuse of discretion for the Board not to have reopened the appeal.

While Mr. Zamot argues that it is unfair that he has been removed while the other employee involved in the altercation merely endured a 60–day suspension, that conclusion goes to the merits of Mr. Zamot's removal case and not to whether the Board had jurisdiction over his removal case or whether he had good cause for his untimely filing. Because we conclude that the Board did not commit legal error or abuse its discretion in holding that it lacked jurisdiction over Mr. Zamot's ap-

peal and declining to reopen his case, we uphold the Board's decision.

*AFFIRMED.*

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent, for the uncertainties as to Mr. Zamot's veterans' preference status require resolution and clarification. Consideration should have been given to the letter from the Chief of Naval Operations concerning the Commendation and to the letter from the Regional Representative stating that the Navy consulted the Judge Advocate General and advised that the Chief of Naval Operations' letter should suffice for the purpose of preference eligibility jurisdiction. Consideration also should have been given to the difficulties Mr. Zamot encountered in obtaining detailed information from the Navy, and to the purpose of the veterans' preference law.

Mr. Zamot provided evidence that he had five years of active service in the United States Navy, from 1984 to 1989, and was honorably discharged. He subsequently joined the Army Ready Reserve, and was called to active duty in October 2001. During his Naval service he received a Sea Service Deployment Ribbon, a Navy Battle "E" Ribbon, a First Good Conduct Medal, and a Meritorious Unit Commendation.

Mr. Zamot encountered obstacles in his efforts to establish compliance with the statutory definition of a "preference eligible" veteran. The definition of "preference eligible," at 5 U.S.C. § 2108(3) is incorporated into 39 U.S.C. § 1005(a)(4)(A)(i) which grants the right of appeal to the Board to veterans who "served on active duty in the armed forces during a war, [or] in a campaign or expedition for which a campaign badge has been authorized". 5 U.S.C. § 2108(1). *See*

*Flanagan v. Young,* 228 F.2d 466, 472 (D.C.Cir.1955) ("It is a truism to say that the Veterans' Preference Act is to be construed, wherever possible, in favor of the veteran." (citations omitted)); *Adler v. United States,* 129 Ct.Cl. 150, 156 (1954) ("[I]t is plain that the [1944] Act did not mean to restrict the preference of veterans, but to enlarge them.") In construing Section 2108(1), this court held that military service alone is inadequate, and that a veteran must show "involvement or participation" in a qualifying campaign or expedition. *Perez v. Merit Systems Protection Board,* 85 F.3d 591, 594 (Fed.Cir.1996) (holding that a soldier stationed at a base geographically distant from a campaign is not preference eligible). The holding of *Perez* was overruled by the Defense Authorization Act of Fiscal Year 1998, Pub.L. No. 105–85, Div. A, Title XI, § 1102(a) (1997), with regard to preference eligibility for service during the Gulf War, the issue in *Perez.*

The administrative judge advised Mr. Zamot that he must establish that he served in a campaign or expedition for which a campaign badge was authorized, and directed Mr. Zamot to an Office of Personnel Management (OPM) resource that listed campaigns, expeditions, or awards that qualify for preference eligible status. Mr. Zamot requested more time to assemble this documentation, and the administrative judge dismissed the appeal without prejudice, giving Mr. Zamot an additional three months to refile the appeal.

Mr. Zamot timely refiled in January 2001, and submitted a letter from the Chief of Naval Operations stating that Mr. Zamot received a unit award for meritorious service for the period April 1, 1988 to September 30, 1989. Mr. Zamot filed a statement that "appellant was informed by the Navy that Naval JAG was consulted and that this letter should suffice for his purpose of Preference Eligibility/Jurisdiction before the US–MSPB." Mr. Zamot stated that he was "able to secure [the letter] with great difficulty," because the "Naval Service and War Office were most reluctant to release the enclosed letter."

Before the Board Mr. Zamot stated that he served on a "Warship [ ] on duty station in the Middle East in direct support of both Overt as well as Covert Combat Operations" during the period leading to the Gulf War. He stated that the Navy was reluctant to release additional information as much of it was classified. He again asked for more time, on the ground that the criteria set by OPM were difficult to establish through Navy personnel, who had already told him that Navy JAG had stated that his service and the letter from the Chief of Naval Operations met the requisite criteria. The Postal Service objected to the request for more time, and the administrative judge denied the request.

The administrative judge held that Mr. Zamot had not shown that his military service qualified for veterans' preference, for his active Naval service was not during the Gulf War period stated in the statute that overruled *Perez, viz.* August 2, 1990 to January 2, 1992, and for other periods the materials submitted did not show that he met the statutory requirements of participating in a campaign or expedition. Mr. Zamot states that he served in the Persian Gulf in support of covert and overt operations between 1988 and 1989. The OPM materials referred by the administrative judge state that an Armed Forces Expeditionary Medal was authorized for participation in a United States military operation that involved the protection of shipping vessels in the Persian Gulf between July 1987 and August 1990. Mr. Zamot's statements concerning the view of Navy officials upon consultation with Navy

JAG, and the letter from the Chief of Naval Operations, were given no weight. The administrative judge held that Mr. Zamot did not meet the requirements of veterans' preference eligibility, referencing *Hamilton v. United States Postal Service,* 86 M.S.P.R. 215, 217 (2000), and explaining as follows:

> Unlike *Hamilton,* however, the appellant in this appeal has not shown that he received an Expeditionary Medal and, therefore, has not shown that he is a preference eligible entitled to appeal his removal to the Board. Although the appellant argues that he is precluded by law from releasing information about his service due to the secret/classified information involved, See Refiled Appeal File, Tab 1, this undisclosed information is insufficient to establish that he received an Expeditionary Medal in a campaign or expedition for which a campaign badge was authorized.

This explanation suggests that Mr. Zamot was required to show that he received an Expeditionary Medal. Mr. Zamot could reasonably have understood this decision to set a requirement that he could not meet, for he did not continue that appeal. The statutory requirement, however, is not receipt of an Expeditionary Medal, but service in a campaign for which a medal was authorized. *See Perez,* 85 F.3d at 594. *Hamilton* states only that a veteran who did receive an Expeditionary Medal is not required to provide further proof that he served in a qualifying campaign. 86 M.S.P.R. at 217. Mr. Zamot explains that he was "under the impression or understanding that he no longer had any legal standing" with the Board as a veteran, and that he therefore pursued EEOC relief.

Mr. Zamot returned to the Board, stating that the EEOC made an affirmative finding that he was a whistleblower, and seeking to appeal his dismissal on this ground. However, the Board did not consider the case as a whistleblower action, but treated the filing as an appeal of the Initial Decision denying veterans' preference of almost a year earlier. The Board then examined the issue of timeliness, and ruled that Mr. Zamot had not established good cause for the delay in appealing the Initial Decision because his submission concerning delay was not properly sworn, and that he had six months after the Initial Decision before his recall to active duty. The Board held that Mr. Zamot's *pro se* status and inexperience with legal matters were no excuse, and dismissed the action. This dismissal is now before us. Mr. Zamot, as a *pro se* petitioner, is entitled to sympathetic review. *See Wright v. United States Postal Service,* 183 F.3d 1328, 1332 (1999) ("The board has broad discretion in deciding whether reconsideration of a decision is necessary to preserve consistency or achieve the 'right result.' ") The Board is obligated to exercise this discretion when needed to assure compliance with the legislative purpose of the merit system of federal employment. This purpose includes equitable application of penalty—for it cannot be ignored that the person with whom Mr. Zamot scuffled in the locker room, appealing as a veteran, received only a sixty-day suspension, while Mr. Zamot remains terminated.

The Board had the opportunity and indeed the obligation to review, clarify, and if warranted to correct the administrative judge's decision as to veterans' preference. As the Supreme Court has recognized, procedural latitude is appropriate for *pro se* parties. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In view of the importance of recognizing veterans' rights, the material provided by the Navy should not have been rejected by the administrative judge. The statement of the Chief of Naval Operations, the view of Navy JAG, and the

OPM materials concerning his time and area of service, should have been interpreted generously, not rejected out of hand. The matter should be remanded for further consideration.