NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3061

JERRY GRIBCHECK,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

_____

DECIDED: August 17, 2005

_____

Before MICHEL, Chief Judge, NEWMAN and LINN, Circuit Judges.

Opinion for the court filed by Chief Judge MICHEL. Dissenting opinion filed by Circuit Judge NEWMAN.

MICHEL, Chief Judge.

Jerry Gribcheck (Gribcheck) petitions for review of the decision of the Merit Systems Protection Board (Board), Gribcheck v. United States Postal Service, 97 M.S.P.R. 355 (Sept. 27, 2004), dismissing his appeal as untimely filed without a showing of good cause. We affirm the Board's decision.

BACKGROUND

Gribcheck was employed as an Electronics Technician with the United States Postal Service (Postal Service or Agency) in Cleveland, Ohio. In February 1998, the Agency ordered Gribcheck to submit to a psychiatric fitness-for-duty examination. The examining psychiatrist, Dr. Syed, diagnosed Gribcheck with a Paranoid Personality Disorder, manifested by inappropriate anger, and perceptions of harassment and persecution. The Agency thus informed Gribcheck that he would not be able to return to work until he provided a medical report specifying the type of treatment he was receiving for his condition, and including a statement from a treating psychiatrist that Gribcheck did not pose a hazard to himself or to others.

Gribcheck responded with a report from another psychiatrist, Dr. Moskovitz, stating that Gribcheck was not a danger to himself or others, and that he was fit to return to duty. To resolve the conflicting opinions of Drs. Syed and Moskovitz, the Agency arranged a third fitness-for-duty examination in August 1998. Gribcheck refused to comply. Accordingly, on September 15, 1998, the Postal Service informed him that he could not return to duty until he submitted to the examination.[1] On February 24, 1999, the Agency issued a notice proposing to place Gribcheck on enforced leave

---

[1] Gribcheck filed two appeals with the Board, dated September 29, 1998 and October 2, 1998, respectively. The first appeal challenged the Agency's refusal to allow him to return to duty before submitting to a fitness-for-duty examination. The second asserted that the Agency forced him to use sick leave and leave without pay for the period at issue in the prior appeal. The administrative judge (AJ) joined the two appeals for decision.

until the conflict between Dr. Syed's and Dr. Moskovitz's opinion was resolved.[2]  The Agency issued a decision placing him on enforced leave effective March 27, 1999.

On February 17, 2000, Gribcheck completed a fitness-for-duty examination with Dr. Kausch, who submitted his report to the Agency on March 6, 2000.  In his diagnosis, Dr. Kausch concluded that Gribcheck suffered from Personality Disorder Not Otherwise Specified with borderline and narcissistic traits.  While Dr. Kausch indicated that Gribcheck did not appear to pose an immediate threat to his co-workers, he did recommend that Gribcheck be placed in a less stressful position with different peers and supervisors.

On July 19, 2000, the Agency's Human Resources Manager, Donna Butwin proposed several alternative positions to Gribcheck.  He accepted the Agency's proposal on August 31, 2000.  The formal agreement presented to Gribcheck on October 25, 2000, however, imposed additional conditions on his return to work, such as continuing therapy sessions as well as waiver of any future grievances, discrimination complaints, court actions or appeals.  Gribcheck refused to accept the settlement agreement.  The Agency did not return Gribcheck to work until December 2002.

---

[2]    On March 24, 1999, Gribcheck filed a third appeal, challenging the enforced leave before the Board.  On December 17, 1999, the AJ dismissed Gribcheck's first two appeals as moot, yet found that Gribcheck failed to establish his affirmative defenses of disability discrimination and retaliation for filing equal employment opportunity complaints and a suit in district court.  In a separate initial decision in Gribcheck's third appeal, the AJ sustained the agency's action and again found that the appellant failed to establish those same affirmative defenses.  The full Board affirmed.  Gribcheck v. United States Postal Serv., 87 M.S.P.R. 473 (2001).

On December 11, 2002, shortly before his return to work, Gribcheck filed the instant appeal with the Board, alleging that the Postal Service continued to maintain him on enforced leave from March 1999. Gribcheck argued that the Agency was obligated to return him to work upon receiving the report of Dr. Kausch, establishing Gribcheck's fitness for duty.

On December 27, 2002, the AJ issued an Acknowledgment Order advising Gribcheck that his appeal might be untimely and affording him an opportunity to present evidence and argument as to timeliness and good cause. Gribcheck timely responded. The Agency moved to dismiss the appeal as untimely. In an April 2, 2003 Initial Decision following a hearing, the AJ determined that the Board had jurisdiction over Gribcheck's appeal. The AJ then reversed the Agency's action based on its failure to provide Gribcheck advance written notice of its adverse action. The AJ made no determination as to the timeliness of Gribcheck's appeal.

The full Board reversed on September 27, 2004. The Board explained that once an Agency learns that an employee who had been placed on enforced leave pending the Agency's inquiry into his ability to perform is fit for duty, the employee must be restored to active duty status. 97 M.S.P.R. 355, ¶ 6. The Board thus found that the Agency should have returned Gribcheck to work as of July 2000, when it determined that he could return to work in a different capacity and identified an appropriate position for him. The Agency's failure to restore Gribcheck to duty in July 2000 constituted an adverse action appealable to the Board and triggered the 30-day limitation for such an appeal prescribed by 5 C.F.R. § 1201.22(b)(1).

The Board next considered whether good cause excused Gribcheck's delay in filing his appeal, finding that while ensuing events may provide good cause for some of the delay, they do not excuse the entire period — two years and four months. The Board explained that between July and October 2000, Gribcheck and the Agency were in communication about his return, which may have led him to believe that the Agency would restore him to duty without further resort to the Board. However, the Board found that "the agency's offer of a position contingent on his withdrawing his appeal constitutes a clear indication that the agency would not fulfill its obligation to end the enforced leave and return him to work, even though it had determined that it could safely do so." 97 M.S.P.R. 355, ¶ 9. The Board found that Gribcheck failed to explain why he did not file his appeal at that time. Nonetheless, the Board noted that Gribcheck may have been confused as to the necessity of filing another appeal with the Board, given his then-pending appeal of the Agency's formal March 27, 1999 enforced leave. Even so, this excuse expired when the Board issued its decision in Gribcheck's appeal on January 25, 2001. Gribcheck failed to file until December 2002, nearly two years later.

Finally, the Board determined that although Gribcheck received no specific notice of the requirement that he appeal in a timely fashion, he was well aware of the Board's appeal process, having participated in it repeatedly. Instead of filing an appeal with the Board, however, Gribcheck challenged the Postal Service's actions in other fora. The Board thus dismissed Gribcheck's appeal as untimely without good cause shown.

DISCUSSION

To establish good cause for a filing delay, an appellant must show that the delay was excusable under the circumstances and that the appellant exercised due diligence in attempting to meet the filing deadline. Phillips v. United States Postal Serv., 695 F.2d 1389, 1391 (Fed. Cir. 1982). The factors bearing on whether there is good cause for an untimely filing include the length of the delay, whether the appellant was notified of the time limit, the existence of circumstances beyond the appellant's control that affected his ability to comply with the deadline, the appellant's negligence, if any, and any unavoidable casualty or misfortune that may have prevented timely filing. See Zamot v. Merit Sys. Prot. Bd., 332 F.3d 1374, 1377 (Fed. Cir. 2003). The waiver of a regulatory time limit based on a showing of good cause "is a matter committed to the Board's discretion and . . . this court will not substitute its own judgment for that of the Board." Mendoza v. Merit Sys. Prot. Bd., 966 F.2d 650, 653 (Fed. Cir. 1992) (en banc).

We hold that the Board did not abuse its discretion in dismissing Gribcheck's appeal as untimely. The Board correctly found that the Agency had an obligation to restore Gribcheck to work upon learning that he was fit for duty. The Board identified that date as July 19, 2000, the date Butwin proposed several alternative positions to Gribcheck. That date could just as likely be the earlier date of March 6, 2000, marking the Agency's receipt of Dr. Kausch's report. True, the exact date of the Agency's adverse action — or rather its inaction in failing to restore Gribcheck to duty — is somewhat elusive. Nonetheless, the Board accurately concluded that Gribcheck should have known based on the Agency's October 25, 2000 settlement agreement that the Agency had no intention of returning him to work.

Yet Gribcheck waited over two more years before filing his appeal with the Board. Importantly, the Board found that he challenged the same set of events in other fora. He pursued grievances, filed an unfair labor practice charge, sought review of the Board's decision with the EEOC, and filed suit in state court. Based on this evidence, the Board concluded that while not all of the actions Gribcheck pursued involved the exact issue of whether his enforced leave was warranted, "they raise[d] issues and facts related to the fitness-for-duty examination, the agency's handling of the matter, and the enforced leave." Gribcheck, 97 M.S.P.R. 355, at ¶ 11. In sum, the Board concluded that Gribcheck was aware of his right to challenge his constructive suspension, but chose to do it elsewhere.[3]

The Board further determined that Gribcheck knew of the Board's thirty-day appeal deadlines from his multiple prior appeals. Indeed, Gribcheck had filed three previous, timely appeals from the Agency's actions related to his enforced leave. Having determined that Gribcheck knew he had a right to appeal and knew the deadline for so doing, yet failed to act diligently, the Board certainly acted within its discretion in finding Gribcheck's prolonged delay unexcused. We see no reason to disturb the Board's determination.

For these reasons, the decision of the Board is affirmed.

No costs.

---

[3] The dissent cites 5 C.F.R. § 1201.21 to argue that the Agency must provide notice of adverse actions and appeal rights. That regulation, however, plainly applies only to situations "[w]hen an agency issues a decision notice to an employee on a matter that is appealable to the Board. . . ." 5 C.F.R. § 1201.21. The regulation does not apply here, where the Agency took no overt adverse action, but instead failed to remove Gribcheck from his enforced leave status. In other words, here, the Agency action was a constructive one, no decision notice was issued and, accordingly, no appeal deadlines were included.

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3061

JERRY GRIBCHECK,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

NEWMAN, <u>Circuit Judge</u>, dissenting.

Jerry Gribcheck was placed on enforced leave by the Postal Service, and was never informed by the Postal Service that a new adverse action had been taken against him or of his appeal rights.  The administrative judge of the MSPB correctly recognized the requirement that an agency provide notice of appeal rights when it takes an adverse action.  The panel majority rules that notice was not required, of either the appeal rights or that an adverse action was taken.  That is not the law.  It is unworkable to develop a new rule of "constructive adverse action" whereby the employee's statutory time for appeal is expiring although he has no notice that the time is running.  I respectfully dissent.

DISCUSSION

The events leading to this appeal generally start with a fitness-for-duty examination conducted by Otto Kausch, M.D., in 2000, at a time when Mr. Gribcheck had been on enforced leave since March 27, 1999 for refusing to submit to an earlier fitness-for-duty reexamination. Dr. Kausch, in this third fitness examination, advised against returning Mr. Gribcheck to the same work environment but suggested that he be placed in a less stressful environment wherein he would work with different peers and supervisors. The agency then offered Mr. Gribcheck several possible placements, and he selected one on Aug. 31, 2000. A month later, the agency presented Mr. Gribcheck with a formal written agreement placing him in the position he had selected, but imposing other conditions on his return to work, such as continuing psychotherapy and waiver of all grievances, discrimination complaints, and appeals to the Board. Mr. Gribcheck refused to accept the proposed agreement. He eventually returned to work at the Postal Service in December 2002, without signing the proffered agreement.

On December 11, 2002, shortly before his return to work, Mr. Gribcheck filed the appeal to the Board that is now before us. He argued that the agency had improperly kept him from work during the period from March 1999 until the time of the appeal. He argued that Dr. Kausch's report established his fitness for duty and that the agency had been obligated to return him to duty promptly upon its receipt. The administrative judge (AJ) agreed, ruling that when an employee is placed on enforced leave, the agency is required to return the employee to duty immediately upon learning that the basis for the enforced leave no longer exists, citing Mercer v. Department of Health and Human Services, 772 F.2d 856, 858 (Fed. Cir. 1985). Thus, the AJ reasoned, Mr. Gribcheck's enforced leave

05-3061                                    2

ended with Dr. Kausch's report. The AJ ruled that the agency's failure to return him to duty constituted a constructive suspension. Since the agency had not provided Mr. Gribcheck with the requisite advance written notice of this adverse action, or an opportunity to respond before the agency took adverse action, the AJ reversed the agency action and ordered reinstatement as of the date of Dr. Kausch's report.

The full Board granted the government's petition for review. The Board agreed with the AJ that the agency should have returned Mr. Gribcheck to duty when it had sufficient information to determine that he was fit for duty, and held that the agency made this determination "in July 2000." However, the Board also held that Mr. Gribcheck should have filed his appeal within thirty days of the agency's internal determination that he was fit for duty. Thus the Board dismissed Mr. Gribcheck's appeal for untimely filing. The panel majority agrees.

The propriety of the agency's decision to place Mr. Gribcheck on enforced leave when he refused to submit to a third fitness-for-duty examination is not before us. The AJ and the full Board ruled that by continuing Mr. Gribcheck in enforced leave after this third examination, the agency had taken a new adverse action giving rise to fresh appeal rights; that ruling is not disputed by the agency. The Board acknowledged that the agency gave Mr. Gribcheck no notice that it was engaging in another adverse action or of his rights to appeal. The panel majority does not assign error to these findings. Nonetheless, the court now holds that Mr. Gribcheck was required to file an appeal as if he had been given the required notice, on the court's theory that he should have known that the enforced leave might not end within the month. I cannot agree that this is, or should be, the law. It is fundamentally unfair to permit "constructive" adverse actions, with no necessity of notice,

yet starting the thirty-day deadline. Thirty days is an extraordinarily short period of limitations, whose justification is the explicit requirement that the agency must provide notice to the employee when taking adverse action against him.

Mr. Gribcheck had been engaged in a dispute with the agency over his fitness for duty since at least February of 1998, when the agency insisted that he be examined by a psychiatrist. He had made repeated efforts to convince the agency that he was fit for duty throughout this period without success, yet is now charged with knowing, within thirty days, the date upon which the agency changed its mind and concluded he was fit for duty. He is charged with the thirty-day deadline although the agency remained silent. Even the Board did not specify the date of the agency's adverse action any more precisely than "in July 2000." Indeed, the panel majority concedes that "the exact date of the Agency's adverse action -- or rather its inaction in failing to restore Gribcheck to duty -- is somewhat elusive," yet the court charges Mr. Gribcheck with knowledge of the agency's silent mindset.

It is to avoid such bizarre results that agencies are required to provide written notice of adverse actions and the accompanying appeal rights and deadlines. See 5 C.F.R. §1201.21.[1] Only after the employee is notified of his appeal rights does the duty arise to

---

1       5 C.F.R. §1201.21 Notice of appeal rights.

When an agency issues a decision notice to an employee on a matter that is appealable to the Board, the agency must provide the employee with the following:
(a) Notice of the time limits for appealing to the Board, the requirements of §1201.22(c), and the address of the appropriate Board office for filing the appeal;
(b) A copy, or access to a copy, of the Board's regulations;
(c) A copy of the appeal form in Appendix I of this part;  and
(d) Notice of any right the employee has to file a grievance, including:
(1) Whether the election of any applicable grievance procedure will result in waiver of the employee's right to file an appeal with the Board;
(2) Whether both an appeal to the Board and a grievance may be filed on the

pursue them timely and diligently. Precedent uniformly so holds. <u>See</u>, <u>e.g.</u>, <u>Shiflett v. United States Postal Service</u>, 839 F.2d 669, 674 (Fed. Cir. 1988) ("We hold that the failure of the respondent to give notice to petitioner of her appeal rights constituted good cause for the late filing by petitioner of her appeal. An agency must follow all applicable procedures."); <u>Casey v. Merit Systems Protection Board</u>, 748 F.2d 685, 687 (Fed. Cir. 1984) ("We vacate and remand this case to the Board for its determination as to whether Casey acted timely once he received notification of his appeal rights."); <u>Carroll v. United States Postal Service</u>, 87 M.S.P.R. 570, 573 (2001) (excusing an eight year late filing because "the agency failed to meet its obligation to provide a notice of appeal rights"). In this case, not only was Mr. Gribcheck never notified of his appeal rights, but he was never notified that an adverse action was taken.

The Board acknowledged that Mr. Gribcheck had not been notified that an adverse action had been taken or of his rights to appeal, but casually dismissed the notice requirement, stating that "[a]lthough the appellant received no specific notice of the requirement that he appeal in a timely fashion after the agency determined not to end the enforced leave, he was well aware of the Board's appeal process, having participated in it very recently." The panel majority agrees: "the Board correctly determined that Gribcheck

---

same matter and, if so, the circumstances under which proceeding with one will preclude proceeding with the other, and specific notice that filing a grievance will not extend the time limit for filing an appeal with the Board; and

   (3) Whether there is any right to request Board review of a final decision on a grievance in accordance with §1201.154(d).

knew of the Board's thirty day appeal deadlines from his multiple prior appeals." Maj. Op. at 7. The majority thus suggests that it was unnecessary to notify Mr. Gribcheck that an adverse action had been taken against him, because he had previously filed appeals in other actions. By statute and regulation and fundamental fairness, he was entitled to notice that there had been an adverse action, and the right to appeal. He cannot be charged with constructive notice of the thirty-day appeal period, unless he knew that he had been acted against on an appealable issue. From the court's contrary ruling, I respectfully dissent.