MICHEL, Chief Judge.
Jerry Gribcheck (Gribcheck) petitions for review of the decision of the Merit Systems Protection Board (Board), Gribcheck v. United States Postal Service, 97 M.S.P.R. 355 (Sept. 27, 2004), dismissing his appeal as untimely filed without a showing of good cause. We affirm the Board’s decision.
BACKGROUND
Gribcheck was employed as an Electronics Technician with the United States Postal Service (Postal Service or Agency) in Cleveland, Ohio. In February 1998, the Agency ordered Gribcheck to submit to a psychiatric fitness-for-duty examination. The examining psychiatrist, Dr. Syed, diagnosed Gribcheck with a Paranoid Personality Disorder, manifested by inappropriate anger, and perceptions of harassment and persecution. The Agency thus informed Gribcheck that he would not be able to return to work until he provided a medical report specifying the type of treatment he was receiving for his condition, and including a statement from a treating psychiatrist that Gribcheck did not pose a hazard to himself or to others.
Gribcheck responded with a report from another psychiatrist, Dr. Moskovitz, stating that Gribcheck was not a danger to himself or others, and that he was fit to return to duty. To resolve the conflicting opinions of Drs. Syed and Moskovitz, the Agency arranged a third fitness-for-duty examination in August 1998. Gribcheck refused to comply. Accordingly, on September 15, 1998, the Postal Service informed him that he could not return to duty until he submitted to the examination.[1] On February 24, 1999, the Agency issued a notice proposing to place Gribcheck on enforced leave until the conflict between Dr. Syed’s and Dr. Moskovitz’s opinion was resolved.[2] The Agency issued *361 a decision placing him on enforced leave effective March 27,1999.
On February 17, 2000, Gribcheck completed a fitness-for-duty examination with Dr. Kausch, who submitted his report to the Agency on March 6, 2000. In his diagnosis, Dr. Kausch concluded that Gribcheck suffered from Personality Disorder Not Otherwise Specified with borderline and narcissistic traits. While Dr. Kausch indicated that Gribcheck did not appear to pose an immediate threat to his co-workers, he did recommend that Gribcheck be placed in a less stressful position with different peers and supervisors.
On July 19, 2000, the Agency’s Human Resources Manager, Donna Butwin proposed several alternative positions to Gribcheck. He accepted the Agency’s proposal on August 31, 2000. The formal agreement presented to Gribcheck on October 25, 2000, however, imposed additional conditions on his return to work, such as continuing therapy sessions as well as waiver of any future grievances, discrimination complaints, court actions or appeals. Gribcheck refused to accept the settlement agreement. The Agency did not return Gribcheck to work until December 2002.
On December 11, 2002, shortly before his return to work, Gribcheck filed the instant appeal with the Board, alleging that the Postal Service continued to maintain him on enforced leave from March 1999. Gribcheck argued that the Agency was obligated to return him to work upon receiving the report of Dr. Kausch, establishing Gribcheck’s fitness for duty.
On December 27, 2002, the AJ issued an Acknowledgment Order advising Gribcheck that his appeal might be untimely and affording him an opportunity to present evidence and argument as to timeliness and good cause. Gribcheck timely responded. The Agency moved to dismiss the appeal as untimely. In an April 2, 2003 Initial Decision following a hearing, the AJ determined that the Board had jurisdiction over Gribcheck’s appeal. The AJ then reversed the Agency’s action based on its failure to provide Gribcheck advance written notice of its adverse action. The AJ made no determination as to the timeliness of Gribcheck’s appeal.
The full Board reversed on September 27, 2004. The Board explained that once an Agency learns that an employee who had been placed on enforced leave pending the Agency’s inquiry into his ability to perform is fit for duty, the employee must be restored to active duty status. 97 M.S.P.R. 355, 116. The Board thus found that the Agency should have returned Gribcheck to work as of July 2000, when it determined that he could return to work in a different capacity and identified an appropriate position for him. The Agency’s failure to restore Gribcheck to duty in July 2000 constituted an adverse action appeal-able to the Board and triggered the 30-day limitation for such an appeal prescribed by 5 C.F.R. § 1201.22(b)(1).
The Board next considered whether good cause excused Gribcheck’s delay in filing his appeal, finding that while ensuing events may provide good cause for some of the delay, they do not excuse the entire period- — -two years and four months. The Board explained that between July and October 2000, Gribcheck and the Agency were in communication about his return, which may have led him to believe that the *362 Agency would restore him to duty without further resort to the Board. However, the Board found that “the agency’s offer of a position contingent on his withdrawing his appeal constitutes a clear indication that the agency would not fulfill its obligation to end the enforced leave and return him to work, even though it had determined that it could safely do so.” 97 M.S.P.R. 355, 119. The Board found that Gribcheck failed to explain why he did not file his appeal at that time. Nonetheless, the Board noted that Gribcheck may have been confused as to the necessity of filing another appeal with the Board, given his then-pending appeal of the Agency’s formal March 27, 1999 enforced leave. Even so, this excuse expired when the Board issued its decision in Gribeheck’s appeal on January 25, 2001. Gribcheck failed to file until December 2002, nearly two years later.
Finally, the Board determined that although Gribcheck received no specific notice of the requirement that he appeal in a timely fashion, he was well aware of the Board’s appeal process, having participated in it repeatedly. Instead of filing an appeal with the Board, however, Gribcheck challenged the Postal Service’s actions in other fora. The Board thus dismissed Gribeheck’s appeal as untimely without good cause shown.
DISCUSSION
To establish good cause for a filing delay, an appellant must show that the delay was excusable under the circumstances and that the appellant exercised due diligence in attempting to meet the filing deadline. Phillips v. United States Postal Serv., 695 F.2d 1389, 1391 (Fed.Cir.1982). The factors bearing on whether there is good cause for an untimely filing include the length of the delay, whether the appellant was notified of the time limit, the existence of circumstances beyond the appellant’s control that affected his ability to comply with the deadline, the appellant’s negligence, if any, and any unavoidable casualty or misfortune that may have prevented timely filing. See Zamot v. Merit Sys. Prot. Bd., 332 F.3d 1374, 1377 (Fed.Cir.2003). The waiver of a regulatory time limit based on a showing of good cause “is a matter committed to the Board’s discretion and ... this court will not substitute its own judgment for that of the Board.” Mendoza v. Merit Sys. Prot. Bd., 966 F.2d 650, 653 (Fed.Cir.1992) (en banc).
We hold that the Board did not abuse its discretion in dismissing Gribeheck’s appeal as untimely. The Board correctly found that the Agency had an obligation to restore Gribcheck to work upon learning that he was fit for duty. The Board identified that date as July 19, 2000, the date Butvvin proposed several alternative positions to Gribcheck. That date could just as likely be the earlier date of March 6, 2000, marking the Agency’s receipt of Dr. Kausch’s report. True, the exact date of the Agency’s adverse action — or rather its inaction in failing to restore Gribcheck to duty — is somewhat elusive. Nonetheless, the Board accurately concluded that Gribcheck should have known based on the Agency’s October 25, 2000 settlement agreement that the Agency had no intention of returning him to work.
Yet Gribcheck waited over two more years before filing his appeal with the Board. Importantly, the Board found that he challenged the same set of events in other fora. He pursued grievances, filed an unfair labor practice charge, sought review of the Board’s decision with the EEOC, and filed suit in state court. Based on this evidence, the Board concluded that while not all of the actions Gribcheck pursued involved the exact issue of whether his enforced leave was warranted, *363 “they raisefd] issues and facts related to the fitness-for-duty examination, the agency’s handling of the matter, and the enforced leave.” Gribcheck, 97 M.S.P.R. 355, at ¶ 11. In sum, the Board concluded that Gribcheck was aware of his right to challenge his constructive suspension, but chose to do it elsewhere.[3]
The Board further determined that Gribcheck knew of the Board’s thirty-day appeal deadlines from his multiple prior appeals. Indeed, Gribcheck had filed three previous, timely appeals from the Agency’s actions related to his enforced leave. Having determined that Gribcheck knew he had a right to appeal and knew the deadline for so doing, yet failed to act diligently, the Board certainly acted within its discretion in finding Gribcheck’s prolonged delay unexcused. We see no reason to disturb the Board’s determination.
For these reasons, the decision of the Board is affirmed.
No costs.

. Gribcheck filed two appeals with the Board, dated September 29, 1998 and October 2, 1998, respectively. The first appeal challenged the Agency’s refusal to allow him to return to duty before submitting to a fitness-for-duty examination. The second asserted that the Agency forced him to use sick leave and leave without pay for the period at issue in the prior appeal. The administrative judge (AJ) joined the two appeals for decision.

. On March 24, 1999, Gribcheck filed a third appeal, challenging the enforced leave before the Board. On December 17, 1999, the AJ dismissed Gribcheck’s first two appeals as moot, yet found that Gribcheck failed to es *361 tablish his affirmative defenses of disability discrimination and retaliation for filing equal employment opportunity complaints and a suit in district court. In a separate initial decision in Gribcheck’s third appeal, the AJ sustained the agency’s action and again found that the appellant failed to establish those same affirmative defenses. The full Board affirmed. Gribcheck v. United States Postal Serv., 87 M.S.P.R. 473 (2001).

. The dissent cites 5 C.F.R. § 1201.21 to argue that the Agency must provide notice of adverse actions and appeal rights. That regulation, however, plainly applies only to situations ‘‘[w]hen an agency issues a decision notice to an employee on a matter that is appealable to the Board....” 5 C.F.R. § 1201.21. The regulation does not apply here, where the Agency took no overt adverse action, but instead failed to remove Gribcheck from his enforced leave status. In other words, here, the Agency action was a constructive one, no decision notice was issued and, accordingly, no appeal deadlines were included.