NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CHRIS LANIER,**
*Petitioner*

**v.**

**DEPARTMENT OF THE AIR FORCE,**
*Respondent*

---

2022-2166

---

Petition for review of the Merit Systems Protection Board in No. AT-0752-21-0487-I-1.

---

Decided:  January 30, 2024

---

MICHELLE SMITH, Michelle Smith Attorney at Law, Warner Robins, GA, argued for petitioner.

JOSHUA MOORE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, CORINNE ANNE NIOSI.

---

Before CUNNINGHAM, BRYSON, and STARK, *Circuit Judges*.

BRYSON, *Circuit Judge.*

Petitioner Chris Lanier was formerly employed as an electronics mechanic at Robins Air Force Base in Georgia. In 2021, he was removed from his position based on a failed drug test. Mr. Lanier appealed to the Merit Systems Protection Board, which upheld the removal action. He now challenges the Board's decision on several procedural grounds. Finding no reversible error by the Board, we affirm.

I

On August 26, 2020, during the course of his employment, Mr. Lanier was subjected to routine drug testing. He provided a urine sample, which tested positive for methamphetamine, an illicit drug. In November 2020, Mr. Lanier was given a notice of proposed removal predicated on the positive drug test. S. App. 74–77.

Mr. Lanier denied having used methamphetamine. Asked to explain his positive drug test, he speculated that it may have resulted from his use of medicines he had taken to combat a respiratory infection. *Id.* at 49. After investigating the issue, the deciding official concluded that the medicines Mr. Lanier said he had taken could not have produced a positive result given the testing protocol used on his sample. *Id.* at 52–62. After giving Mr. Lanier several opportunities to respond to the notice of proposed removal, the Air Force issued a decision removing him from his position. *Id.* at 36–38.

Mr. Lanier appealed from the removal action, and on October 20, 2021, a Board administrative judge held a hearing on his appeal. Shortly thereafter, the administrative judge issued an initial decision upholding Mr. Lanier's removal. *Id.* at 14–34. Mr. Lanier then filed a petition for review with the full Board. On June 28, 2022, the full Board denied the petition and affirmed the administrative judge's initial decision. *Id.* at 6–13.

## II

### A

Mr. Lanier challenges his removal on several grounds. His strongest claim is one that surfaced for the first time during the hearing before the administrative judge. Dr. Robert Fierro, the lead medical review officer responsible for reviewing Mr. Lanier's test results, testified about the process his office follows after a positive drug test. Dr. Fierro explained that when a particular sample tests positive, his office attempts to contact the donor of the sample to determine if there is an innocent explanation for the positive result. Hearing Recording 2 at 1:29–1:55, 2:45–4:13, *Lanier v. Dep't of the Air Force*, AT-0752-21-0486-I-1 (M.S.P.B. Oct. 20, 2021).

Dr. Fierro testified that after Mr. Lanier's test results came back positive, Dr. Fierro's staff attempted to contact Mr. Lanier multiple times at the phone number Mr. Lanier had provided. Those efforts were unsuccessful. According to Dr. Fierro, messages were left for Mr. Lanier, and his designated employer representative was asked to have Mr. Lanier return the call. *Id.* at 4:15–5:36, 10:13–10:35. Mr. Lanier did not return those calls. *Id.* at 5:28–5:36, 6:47–7:00. At the hearing, Mr. Lanier testified that he was unaware of any telephone calls or messages left for him. Hearing Recording 3 at 2:15–4:43, *Lanier v. Dep't of the Air Force*, AT-0752-21-0486-I-1 (M.S.P.B. Oct. 20, 2021).

Dr. Fierro explained that the reason his office called donors when their tests came back positive was to explain the results of the test and explore medical reasons why the donor would be positive, which would include reviewing drugs the donor was taking and "medical conditions that the donor might have, such as diabetes, which could cause a low pH and thus the donor would be positive." Hearing Record 2 at 3:06–3:42. If the office was unable to determine an medical reason why the test would be positive, it would report a positive result.

During his cross-examination, Dr. Fierro said that certain medical conditions can explain a positive drug test. As an example, he said that diabetes "produces a low pH, and a low pH gets flagged and comes across my desk, and I talk to the donor and we find out that they had diabetes . . . and we make the test negative. We actually cancel it." *Id.* at 8:03–8:28.

In the course of his direct examination later in the hearing, Mr. Lanier testified that in May 2021, he was diagnosed with diabetes. Hearing Recording 3 at 4:46–5:08. He did not at that time offer any corroborating evidence of his diagnosis, such as medical records. In the initial decision, the administrate judge noted that "the appellant produced no independent testimony or evidence to support his asserted diabetes diagnosis." S. App. 18–19. The administrative judge then explained that "[a]bsent such corroboration, I do not find the appellant's testimony credible or persuasive." *Id.* at 19.

Mr. Lanier did not submit medical records corroborating his diabetes diagnosis to the administrative judge, either at the hearing or afterwards. Instead, he petitioned for review of the initial decision by the full Board. In his petition, filed on December 1, 2021, he raised the argument that his test results may have been attributable to his diabetes, but he did not attach or refer to any corroborating medical evidence. *See* Petition for Review File, Tab 1, *Lanier v. Dep't of the Air Force*, AT-0752-21-0486-I-1 (M.S.P.B. Dec. 1, 2021) (S. App. 5). It was not until his representative filed a supplemental petition on January 3, 2022, that he offered medical evidence that he was in fact diagnosed with diabetes as early as May 2021. Petition for Review File, Tab 5, at 9–22, *Lanier v. Dep't of the Air Force*, AT-0752-21-0486-I-1 (M.S.P.B. Jan. 3, 2022) (S. App. 5).

The full Board upheld the administrative judge's decision. With respect to the diabetes issue, the Board noted that the medical records regarding Mr. Lanier's diagnosis

"were available before the record closed below, and the appellant's explanation as to why he was unable to submit them then is not persuasive." S. App. 7 n.2. The Board further explained that it "generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the record closed despite the party's due diligence." *Id.*

B

Mr. Lanier's challenge to the Board's decision on the diabetes issue focuses principally on the Board's failure to take into consideration the medical records that Mr. Lanier submitted for the first time to the full Board with his supplemental petition for review. The Board, however, is not required to consider evidence that was not first presented to the administrative judge if the evidence could have been obtained earlier with the exercise of due diligence. *See Brenneman v. Office of Pers. Mgmt.*, 439 F.3d 1325, 1328 (Fed. Cir. 2006) ("[A] party submitting new evidence in connection with a petition for review must satisfy the burden of showing that the evidence is material and that it could not have been obtained earlier with the exercise of due diligence."); *Azarkhish v. Office of Pers. Mgmt.*, 915 F.2d 675, 679 (Fed. Cir. 1990) (explaining that the full Board did not abuse its discretion in denying review of the administrative judge's decision despite the submission of the new evidence with the petition for review because the petitioner did not show that the new evidence was "not available when the record closed."); *see generally Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("A party in an MSPB proceeding must raise an issue before the administrative judge if the issue is to be preserved for review in this court. Thus, if the party fails to raise an issue in the administrative proceeding or raises an issue for the first time in a petition for review by the full Board, this court will not consider the issue.").

In his brief, Mr. Lanier asserts that his medical records "were unavailable at the time of the initial hearing." Petitioner's Br. 3. But that statement is unsupported and is contrary to the conclusion of the Board that the "documents were available before the record closed before the administrative judge." S. App. 7 n.2. Because the blood tests that formed the basis for Mr. Lanier's diagnosis were conducted in May 2021, it is highly unlikely that the test results were unavailable as of October 2021 when the hearing before the administrative judge was conducted. And even if the testimony about the effect of diabetes on drug testing came as a surprise to Mr. Lanier, he admitted that he was aware of his diagnosis as of that time. Mr. Lanier has not shown that there was any impediment to his obtaining the medical records of his diagnosis and seeking to have them made part of the record before the administrative judge.

Beyond that, the record reflects that Mr. Lanier's urine sample was subjected to two different tests—an immunoassay test and a gas chromatography/mass spectrometry ("GC/MS") test. *See* Hearing Recording 1 at 6:19–8:14, 19:16–20:15, *Lanier v. Dep't of the Air Force*, AT-0752-21-0486-I-1 (M.S.P.B. Oct. 20, 2021); S. App 113. The latter is the more robust test. In this case, both tests produced a positive result. *Id.* at 15:34–15:58.

In his supplemental petition for review and again in his brief, Mr. Lanier cited an article describing the susceptibility of an immunoassay test to false positive results due to its cross-reactivity with other compounds, such as Metformin, a diabetes medication. *See Petitioner's* Br. 3; Petition for Review File Tab 5, at 5–6 (citing Alec Saitman et al., *False-Positive Interferences of Common Urine Drug Screening Immunoassays*, 38 J. ANALYTICAL TOXICOLOGY 387

(2014)).[1]  Significantly, that article referred only to cross-reactivity issues with the immunoassay test, and not with the GC/MS test.  In fact, the article recommended that the "best practice" following a positive immunoassay drug test "involves confirmation with the mass spectrometry (MS) technique such as gas chromatography—mass spectrometry (GC-MS)."  S. App. 250.  That was exactly the test used to confirm Mr. Lanier's positive drug test results.  Mr. Lanier's reliance on the Saitman article is therefore unpersuasive, as it does not account for the fact that his urine sample was subjected to both tests, not just the immunoassay test.

In sum, we conclude that the Board committed no error in its disposition of the diabetes issue.  It is possible that if that issue had been further developed at the hearing or shortly thereafter, it would have called for more careful scrutiny by the administrative judge.  But the issue arose at the hearing only incidentally, and it was not pursued to the extent necessary to support Mr. Lanier's current theory that his positive drug test was attributable to a later-diagnosed medical condition that had not been identified at the time of the drug test.  Given the procedural posture of the case, it was not error for the Board to hold that the diabetes theory did not call for reversal of the decision to remove Mr. Lanier from his position.

### III

Mr. Lanier raises or alludes to several other procedural issues, none of which has merit.

---

[1]  Mr. Lanier submitted this article as an exhibit to his supplemental petition for review.  *See* S. App. 7 n.2, 250-54.

A

At several points in his brief, Mr. Lanier contends that his drug sample was "overdiluted by the lab" and that the overdilution rendered the drug test unreliable. Petitioner's Br. 1, 5, 6. A report from Colonel Lindsay Droz, the deciding official, noted that Mr. Lanier's sample was marked "overdiluted" in the materials relating to the testing process. S. App. 49, 132. But she added that "after reading the description of the procedure . . . it appears that this refers to the fact the sample itself was overdiluted, not that the lab itself diluted the sample." *Id.* at 49. Mr. Lanier never developed the "overdilution" theory before the administrative judge, and he has failed to show that the purported overdilution of the sample could have produced a false positive result on his drug test.

B

Mr. Lanier next contends that there was a gap in the chain of custody for the drug sample as it made its way to the testing facility. Petitioner's Br. 1, 2, 5. That argument is contrary to the parties' pre-hearing stipulation that "[t]he Appellant's specimen . . . tested positive for an illicit drug, methamphetamines." S. App. 15. Moreover, even apart from the stipulation, the chain of custody issue is insubstantial. It is based on the contention that the FedEx documentation prepared at the time the sample was picked up did not include a reference to the time and date of the pickup. There was no suggestion, however, that the package sent from the testing facility, which contained the sample together with documentation confirming that it was Mr. Lanier's sample, was not the same package that was received by the testing lab.

C

At the hearing before the administrative judge, Mr. Lanier's representative raised an issue regarding the scientists who signed off on the positive report regarding Mr.

Lanier's drug sample. At the time that report was prepared, two of the three certifying scientists who reviewed the report signed off on it by initialing and dating the report. At that time, the third certifying scientist who reviewed the report neglected to initial and date the report. According to the testimony of Jean Chambers, supervisory forensic chemist at the laboratory, that omission was later noted, and the third certifying scientist signed off on the report at that later date. *See* S. App. 133–34; Hearing Recording 1 at 11:16–12:26. The third certifying scientist prepared a Memorandum for Record explaining the oversight and confirming that she reviewed the report and certified the test results at the same time as the other scientists who signed off on it. S. App. 133; Hearing Recording 1 at 11:32–12:26.

Ms. Chambers agreed that the third scientist's error in not contemporaneously initialing and dating the report did not affect the test results. *Id.* at 12:30–12:38. Moreover, she noted that only two scientists were required to sign off on the report. Hence the third scientist's signature was superfluous in any event. *See id.* at 11:30–11:55, 32:27–32:44.

The administrative judge found that there was no evidence that the clerical error "is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." S. App. 20. Mr. Lanier provides no reason to reject the administrative judge's conclusion on that issue.

D

Another issue alluded to in Mr. Lanier's brief is his claim that he had taken some expired cold medicine containing pseudoephedrine around the time of his drug test and that the cold medicine might have caused his positive drug test. Ms. Chambers testified, however, that over-the-counter medicines containing pseudoephedrine do not contain the isomer of pseudoephedrine found in

methamphetamine.   For that reason, she explained, the GC/MS test used to test Mr. Lanier's urine sample would not have triggered a positive result based on the presence of such cold medicines in Mr. Lanier's system.   Hearing Recoding 1 at 18:56–20:18.   To the extent Mr. Lanier contended that the medicines he took were old prescription medicines from a previous illness in 2015, the administrative judge found that Mr. Lanier provided no evidence that he had been prescribed medications that might have caused the positive test result. S. App. 18.   The record contains substantial evidence supporting the administrative judge's finding on that issue.

E

During the removal process, Mr. Lanier offered a drug test that he procured from a private source. S. App. 51. That drug test returned a negative result for methamphetamine. *Id.* Mr. Lanier's brief mentions that test, but does not argue that it was error for the agency to disregard it. In any event, the record clearly contains substantial evidence showing that it was not improper for the agency to disregard Mr. Lanier's private drug test.   Ms. Chambers testified that methamphetamine has a short half-life in the body, with 60% of the drug being excreted within 48 hours of drug use.   Hearing Recording 1 at 21:00–21:16.   For this reason, Mr. Lanier's private drug test, taken four months after the agency's test, was of no probative value regarding whether the initial test results were erroneous. *See id.* at 20:39–21:36.

Based on that evidence and corroborating testimony from Dr. Fierro, the administrative judge found that Mr. Lanier's privately procured negative test result from December 2020 did not disprove the positive test from August 2020. S. App. 20.   That conclusion is plainly supported by substantial evidence.

### F

Finally, Mr. Lanier argues that in light of his clean disciplinary record, the Air Force should have considered a lesser penalty than removal. The deciding official testified, however, that her choice of penalty was based on a consideration of all the so-called *Douglas* factors bearing on the choice of penalty. *See Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (1981). She testified that she chose the penalty of removal based largely on the nature and seriousness of the charge and the highly sensitive nature of Mr. Lanier's work—repairing U.S. Air Force aircraft. Hearing Record 2 at 30:00–31:24.

The administrative judge noted that the deciding official had considered each of the *Douglas* factors, including mitigating factors such as Mr. Lanier's good job performance and otherwise clean disciplinary record. Reviewing the deciding official's choice of removal as a penalty, the administrative judge found that the penalty did not exceed the bounds of reasonableness because "the charge of use of an illicit drug is especially serious given the duties of the appellant's position." S. App. at 25.

When the Board sustains an agency's penalty choice as reasonable, we uphold that penalty determination unless it is "clearly excessive or an abuse of discretion." *Coleman v. U.S. Secret Serv.*, 749 F.2d 726, 729 (Fed. Cir. 1984); *see also Mings v. Dep't of Justice*, 813 F.2d 384, 390 (Fed. Cir. 1987) (court will uphold the agency's choice of penalty "unless the severity of the agency's action appears totally unwarranted in light of all the factors"); *Gonzales v. Def. Logistics Agency*, 772 F.2d 887, 889 (Fed. Cir. 1985) (penalty will be upheld unless it is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion"). The penalty imposed by the agency in this case does not rise to that level. We therefore reject Mr. Lanier's challenge to the agency's choice of penalty.

IV

Finding no harmful error in the procedures leading to Mr. Lanier's removal and in the Board proceedings sustaining that removal, we uphold the Board's decision.

No costs.

**AFFIRMED**