NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**EDWARD J. SIMPKINS,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

_____

2024-1921

_____

Petition for review of the Merit Systems Protection Board in No. DC-0842-20-0541-I-2.

_____

Decided:  June 24, 2025

_____

EDWARD J. SIMPKINS, Greenbelt, MD, pro se.

CHRISTOPHER BERRIDGE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY.

_____

Before DYK, STOLL, and STARK, *Circuit Judges*.

PER CURIAM.

Edward J. Simpkins seeks review of a final decision of the Merit Systems Protection Board, which affirmed the Office of Personnel Management's determination that Mr. Simpkins's refunded retirement contributions are not creditable in his annuity computation under the Federal Employees' Retirement System and he was not eligible to redeposit the previously refunded retirement contributions. For the following reasons, we affirm.

## BACKGROUND

Mr. Simpkins, who is also a military veteran, was a federal employee during two relevant periods. Mr. Simpkins was first employed with the United States Postal Service from at least September 26, 1987, to February 9, 1996, when he resigned. He applied for a refund of his retirement contributions from that period, which he received, minus the amount used to offset a government debt he owed. In order to receive the refund, Mr. Simpkins acknowledged "that payment of a refund will result in permanent forfeiture of any retirement rights that are based on the period(s) of Federal Employees Retirement System [(FERS)] service which the refund covers." SAppx34[1] (emphasis omitted).

Mr. Simpkins returned to federal service with the Department of Labor (DOL) in July 2000. He was removed for cause in early 2009, but later that year his removal was changed to a resignation pursuant to a settlement agreement between himself and the DOL. The agreement specified an effective resignation date of April 16, 2009.

Mr. Simpkins later applied to the Office of Personnel Management (OPM) for a deferred annuity for his service.

---

[1] "SAppx" refers to the Supplemental Appendix submitted by the Government at ECF No. 11.

Relevant here, OPM administers civil service retirement laws.  OPM determined that Mr. Simpkins's period of service from September 26, 1987, to February 9, 1996, was "not creditable in the annuity computation under the Federal Employees' Retirement System" because when Mr. Simpkins "applied for and received a refund of [his] FERS retirement deductions, [he] . . . voided all annuity rights for the service on which that refund is based." SAppx48, 50.  Moreover, OPM explained that Mr. Simpkins was not eligible to redeposit the refunded amount because only individuals who worked for the Federal Government on or after October 28, 2009, can pay a redeposit, and Mr. Simpkins was not a covered individual.  Had Mr. Simpkins been eligible to redeposit his retirement contributions and had he actually done so, that period of service would have properly been used in the computation of the FERS annuity.

I

Mr. Simpkins appealed OPM's determination to the Merit Systems Protection Board.  Relevant to this appeal, Mr. Simpkins raised two arguments to the administrative judge:  (1) that he qualified to make a redeposit because he did not resign until on or after October 28, 2009; and (2) that the DOL and OPM breached the settlement agreement.  The administrative judge rejected each argument in her initial decision.

First, the administrative judge found Mr. Simpkins retroactively resigned such that "the record shows that [Mr. Simpkins] 'resigned' from his position with the DOL on April 16, 2009."  SAppx32 (citation omitted).  The administrative judge also relied on the SF-50 notification of personnel action form in Mr. Simpkins's file, which reflects he resigned from his position with the DOL effective April 16, 2009.

The administrative judge also considered Mr. Simpkins's argument that "the last required DOL signature for

[his] resignation was not signed until on or after October 28, 2009," but concluded this did "not . . . change[] the effective date of his resignation, when the language of the Settlement Agreement specifically required that he resign 'no later than April 16, 2009.'" *Id.* (citation omitted).

Second, the administrative judge determined that Mr. Simpkins could not "unilaterally determine that the agency breached the Settlement Agreement, that the breach was material, that the terms of the agreement no longer apply, and that his resignation date is consequently changed from the previous April 16, 2009 date." SAppx33. The administrative judge explained that Mr. Simpkins would have to pursue a breach of settlement agreement action against the agency in an appropriate forum because the Board does "not have the authority in this appeal . . . to make a determination as to whether the Settlement Agreement at issue was breached, or of any potential changes to his resignation date, as a result of such a finding." *Id.*

Because he had not proven he was still employed by the Federal Government on or after October 28, 2009, the administrative judge concluded that Mr. Simpkins failed to prove he was eligible to redeposit his contributions. And because he had applied for and received a refund of his retirement contributions, he had voided all annuity rights for the service on which that refund was based.

## II

Mr. Simpkins then sought review of the administrative judge's initial decision by the Board. The Board denied the petition for review and affirmed the initial decision because it "conclude[d] that [Mr. Simpkins] ha[d] not established any basis under section 1201.115 for granting the petition for review." SAppx6.

The Board agreed with the initial decision and OPM's reasoning regarding Mr. Simpkins's resignation: that he "separated from service prior to October 28, 2009, and,

thus, he was not eligible to redeposit any refunded retirement contribution amounts." SAppx10–11. The Board emphasized that Mr. Simpkins had "provided no support for the proposition that the date the agreement was fully executed affects the agreed-upon effective date" of his resignation. SAppx10. Thus, the administrative judge's initial decision became the Board's final decision pursuant to 5 C.F.R. § 1201.113(b).

Mr. Simpkins sought leave to submit additional evidence after the close of the record: emails he alleged "he [had] recently received" from his union representative that "prove[d] he [was] allowed to repay" his previously refunded contributions. SAppx7–8 n.2 (internal quotation marks and citation omitted). He explained that "he was not able to locate these emails until now." *Id.* (internal quotation marks and citation omitted). The Board found that Mr. Simpkins's "vague assertions do not provide a basis for accepting additional evidence into the record" and denied the motion. *Id.* (citing 5 C.F.R. §§ 1201.114(k), 1201.115(d)).

Mr. Simpkins petitions for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

On appeal, Mr. Simpkins argues: (1) he should be allowed to redeposit refunded contributions because he was employed by the Federal Government on or after October 28, 2009; (2) that the Board "failed to consider [his] prior EEOC activity settlement agreement, union grievances, court cases against the DOL and OPM (retaliation and reprisal)"; and (3) the Board "failed to consider the DOL and OPM tried to also deny [him his] right to deposit

[his] (military) service time." Pet. Informal Br. 1–3.[2]  We
address each issue in turn.

Our review of the Board's decision is limited.  We must
affirm the Board's decision unless we find that it is "(1) ar-
bitrary, capricious, an abuse of discretion, or otherwise not
in accordance with law; (2) obtained without procedures re-
quired by law, rule, or regulation having been followed; or
(3) unsupported by substantial evidence."    5 U.S.C.
§ 7703(c).  Substantial evidence is "such relevant evidence
as a reasonable mind might accept as adequate to support
a conclusion." *Shapiro v. Social Sec. Admin.*, 800 F.3d
1332, 1336 (Fed. Cir. 2015) (citation omitted).

To support his contention that he was employed by the
Government on or after October 28, 2009, Mr. Simpkins
first points to emails that "prove[] [Office of Participant As-
sistance Employee Benefits Security Administration] Di-
rector Watson refused to sign the settlement until after"
October 28, 2009. Pet. Informal Br. 2. After reviewing this
evidence, we conclude that substantial evidence supports

---

[2]    Mr. Simpkins's informal reply brief raises two ad-
ditional issues:  (1) that the settlement agreement between
himself and the DOL is void because "the DOL and OPM
both publicly mentioned" his "termination" despite agree-
ing to allow him to resign; and (2) that the DOL and OPM
discriminated against him "from the beginning of his em-
ployment until the ending and there after too." Pet. Infor-
mal Reply Br. 2–4.  But a reply brief "is not the appropriate
place to raise, for the first time, an issue for appellate re-
view." *Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) (in-
ternal quotation marks and citation omitted).    And
"[a]rguments raised for the first time in a reply brief are
not properly before this court." *Norman v. United States*,
429 F.3d 1081, 1091 n.5 (Fed. Cir. 2005).  Given these is-
sues were not properly raised in Mr. Simpkins's informal
opening brief, we decline to consider them.

the Board's finding that "the record shows that [Mr. Simpkins] resigned from his position with the DOL on April 16, 2009." SAppx32 (internal quotation marks omitted). As the Board recognized, regardless of the date on which the settlement agreement was executed, Mr. Simpkins resigned effective April 16, 2009, because the settlement agreement undisputedly required him to "resign effective no later than April 16, 2009." Pet. Informal Br. 26. Accordingly, the Board reasonably found that the execution date did not "change[] the effective date of his resignation" because "the Settlement Agreement specifically required that he resign no later than April 16, 2009." SAppx32 (internal quotation marks and citation omitted).

To the extent Mr. Simpkins challenges the Board's exclusion of his untimely evidence (including emails from his union representative), we defer to "the sound discretion of the board and its officials" regarding "[p]rocedural matters relative to discovery and evidentiary issues" and "will not overturn the board on such matters unless an abuse of discretion is clear and is harmful." *Curtin v. Off. of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988); *Azarkhish v. Off. of Pers. Mgmt.*, 915 F.2d 675, 679 (Fed. Cir. 1990) (finding no abuse of discretion "[b]ecause petitioner has failed to make a showing of due diligence and prior unavailability of the reports"). Here, the Board explained that Mr. Simpkins's "vague assertions do not provide a basis for accepting additional evidence into the record" and rejected his argument "that he was not able to locate these emails until now." SAppx7–8 n.2 (internal quotation marks and citation omitted). We cannot conclude that the Board abused its discretion in this regard because "[i]n the absence of an explanation for the delay in obtaining the evidence in question, the appellant has not shown that he exercised due diligence or ordinary prudence to obtain the evidence." *Brenneman v. Off. of Pers. Mgmt.*, 439 F.3d 1325, 1328 (Fed. Cir. 2006) (internal quotation marks and citations omitted).

Mr. Simpkins also contends that, under the Federal Arbitration Act (FAA), his removal from DOL was stayed until his arbitration occurred, which he alleges was after October 28, 2009. But Mr. Simpkins fails to advance an argument explaining why the FAA would alter the outcome in this case. "[T]he central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal quotation marks and citation omitted). Mr. Simpkins does not attempt to explain how a statute ensuring enforcement of private agreements to arbitrate would bear on his resignation date. A party forfeits an argument when it fails "to present anything more than a conclusory, skeletal argument." *In re Killian*, 45 F.4th 1373, 1386 (Fed. Cir. 2022); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (holding arguments insufficiently developed in briefing are not preserved).

As to Mr. Simpkins's contentions that the Board "failed to consider [his] prior EEOC activity settlement agreement, union grievances, court cases against the DOL and OPM (retaliation and reprisal)," he fails to articulate why these facts are related to his retirement benefits or provide any explanation of why the Board should have considered this prior activity. Pet. Informal Br. 2. We decline to address this underdeveloped argument. *See, e.g.*, *In re Killian*, 45 F.4th at 1386.

Finally, we are unpersuaded by Mr. Simpkins' allegation that the Board "failed to consider [that] [] DOL and OPM tried to also deny [him his] right to deposit [his] (military) service time." Pet. Informal Br. 3. His military service time was explicitly included in the calculation of his annuity. OPM explained that "[his] military time does not give title towards a [Civil Service Retirement System (CSRS)] component. Therefore, [his] military service deposit was computed at the lower FERS rate *and included in [his] FERS annuity*." SAppx50 (emphasis added). Given

that OPM considered his military service for the FERS calculation, and Mr. Simpkins provides no additional argument on how the Board allegedly failed to consider it for that purpose, we see no error in the Board's failure to consider it for a CSRS calculation, a calculation that Mr. Simpkins does not seek in this appeal.

## CONCLUSION

We have considered Mr. Simpkins's remaining arguments and are not persuaded. For the foregoing reasons, we affirm the decision of the Board.

## **AFFIRMED**

## COSTS

No costs.